**UNITED STATES DISTRICT COURT**
**For the District of Connecticut**

| | | |
|---|---|---|
| **WILLIAM NESBITT,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00699** |
| | ) | |
| **BRUCE BEMER,** | ) | |
| | ) | |
| *Defendant* | ) | **April 23, 2018** |

<u>**NOTICE OF REMOVAL**</u>

To the Judges of the United States District Court for the District of Connecticut:

The notice of removal of Bruce Bemer respectfully shows:

1.  On March 22, 2018, an action was commenced against Defendant Bruce Bemer ("Defendant Bemer") in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport, No. FBT-CV18-6072685-S, entitled William Nesbitt, Plaintiff ("Plaintiff") v. Bruce Bemer, Defendant.

2.  On March 22, 2018, service was made on Defendant Bemer of a summons and complaint. Copies of the summons, complaint, and return of service are attached to this notice.

3.  Additionally, the following pleadings and orders have been served upon Defendant Bemer, copies of which are attached to this notice:

    a.  March 26, 2018 motion to consolidate;

    b.  March 26, 2018 motion for order for prejudgment remedy;

    c.  April 5, 2018 motion to file documents under seal and memorandum in support of such motion;

    d.  April 6, 2018 joint motion for stipulated protective order.

4. On March 23, 2018, Plaintiff filed a Complaint with the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport. This complaint contains a claim of violation of United States Code, Title 18, Section 1595.

5. This action is a civil action of which this Court has original jurisdiction under the provisions of the United States Code, Title 28, Section 1331, as Plaintiff includes a cause of action arising under United States Code, Title 18, Section 1595, and is one that may be removed to this Court by Defendant Bemer, pursuant to United States Code, Title 28, Section 1441(c).

6. 6.    The thirtieth day after service falls on Saturday, April 21, 2018.  Removal is taking place on the first day court is open after April 21, 2018.

WHEREFORE, Defendant Bemer prays that this action now pending against him in the Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport, be removed from that court to this Court.

RESPECTFULLY SUBMITTED,

THE DEFENDANT,
BRUCE BEMER

By: /s/ Ryan P. Barry
Ryan P. Barry
Fed. Bar No. ct21683
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040
(P): (860) 649-4400
(F): (860) 645-7900
rbarry@bbsattorneys.com
His Attorney

UNITED STATES DISTRICT COURT
For the District of Connecticut

| | | |
|---|---|---|
| **WILLIAM NESBITT,** | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| v. | ) | **Case No. 3:18-cv-00699** |
| | ) | |
| **BRUCE BEMER,** | ) | |
| | ) | |
| *Defendant* | ) | **April 23, 2018** |

## CERTIFICATE OF SERVICE

I hereby certify that on April 23, 2018, a copy of the foregoing was served on the

following:

Gerald S. Sack, Esq.
Law Offices of Gerald S. Sack, LLC
836 Farmington Avenue
West Hartford, CT 06119
P: (860) 236-7225
F: (860) 231-8114
E: gssack@sacklawoffice.com
(Plaintiff – William Nesbitt)

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P: (203) 624-9500
F: (203) 624-9100
E: jfaxon@faxonlawgroup.com
(Plaintiffs - Edward Barron, et al.)

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P: (860) 827-0880

F: (860) 827-9942
E: kevin@kevinferrylaw.com
(Plaintiffs - John Doe et al.))

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com
(Plaintiff - Michael Fleming)

Edward J. Gavin, Esq.
Law Offices of Edward J. Gavin
1087 Broad Street, 1st Floor Left
Bridgeport, CT 06604
P: (203) 347-7050
F: (203) 683-6555
E: ed@edgavinlaw.com
(Defendant – William Trefzger)

                                       /s/ Ryan P. Barry
                                       Ryan P. Barry
                                       Fed. Bar No. ct21683

## SUMMONS - CIVIL

JD-CV-1 Rev. 4-16
C.G.S. §§ 51-346, 51-347, 51-349, 51-350, 52-45a,
52-48, 52-259, P.B. §§ 3-1 through 3-21, 8-1, 10-13

**See other side for instructions**

STATE OF CONNECTICUT
**SUPERIOR COURT**
*www.jud.ct.gov*



| | | |
|---|---|---|
| ☐ | "X" if amount, legal interest or property in demand, not including interest and costs is less than $2,500. | |
| ☒ | "X" if amount, legal interest or property in demand, not including interest and costs is $2,500 or more. | |
| ☐ | "X" if claiming other relief in addition to or in lieu of money or damages. | |

TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint.

| Address of court clerk where writ and other papers shall be filed *(Number, street, town and zip code)* (C.G.S. §§ 51-346, 51-350) | Telephone number of clerk *(with area code)* | Return Date *(Must be a Tuesday)* |
|---|---|---|
| 1061 Main Street, Bridgeport, CT 06604 | ( 203 )579-6527 | May ____ 1 , 2018<br>*Month* — *Day* — *Year* |

| ☒ Judicial District | ☐ G.A. | At *(Town in which writ is returnable)* (C.G.S. §§ 51-346, 51-349) | Case type code *(See list on page 2)* | |
|---|---|---|---|---|
| ☐ Housing Session | Number: | Bridgeport | Major: T | Minor: 90 |

**For the Plaintiff(s) please enter the appearance of:**

| Name and address of attorney, law firm or plaintiff if self-represented *(Number, street, town and zip code)* | Juris number *(to be entered by attorney only)* |
|---|---|
| Law Office of Gerald S. Sack, LLC, 836 Farmington Avenue, Suite 109, West Hartford, CT 06119 | 423992 |

| Telephone number *(with area code)* | Signature of Plaintiff *(If self-represented)* | |
|---|---|---|
| ( 860 ) 236-7225 | | |

| The attorney or law firm appearing for the plaintiff, or the plaintiff if self-represented, agrees to accept papers (service) electronically in this case under Section 10-13 of the Connecticut Practice Book. | ☒ Yes ☐ No | Email address for delivery of papers under Section 10-13 *(if agreed to)* <br> gssack@sacklawoffice.com |
|---|---|---|

| Number of Plaintiffs: 1 | Number of Defendants: 1 | ☐ Form JD-CV-2 attached for additional parties |
|---|---|---|

| Parties | Name *(Last, First, Middle Initial)* and Address of Each party *(Number; Street; P.O. Box; Town; State; Zip; Country, if not USA)* | |
|---|---|---|
| First Plaintiff | Name: Nesbitt, William <br> Address: 75 Audubon Avenue, Newington, CT 06111 | P-01 |
| Additional Plaintiff | Name: <br> Address: | P-02 |
| First Defendant | Name: Bemer, Bruce, 215 Sherwood Drive, Glastonbury, CT 06033 <br> Address: c/o Ryan P. Barry, Esquire, Barry, Barall & Spinella, 202 West Center Street, Manchester, CT 06042 | D-01 |
| Additional Defendant | Name: <br> Address: | D-02 |
| Additional Defendant | Name: <br> Address: | D-03 |
| Additional Defendant | Name: <br> Address: | D-04 |

## Notice to Each Defendant

1. **YOU ARE BEING SUED.** This paper is a Summons in a lawsuit. The complaint attached to these papers states the claims that each plaintiff is making against you in this lawsuit.
2. To be notified of further proceedings, you or your attorney must file a form called an "Appearance" with the clerk of the above-named Court at the above Court address on or before the second day after the above Return Date. The Return Date is not a hearing date. You do not have to come to court on the Return Date unless you receive a separate notice telling you to come to court.
3. If you or your attorney do not file a written "Appearance" form on time, a judgment may be entered against you by default. The "Appearance" form may be obtained at the Court address above or at *www.jud.ct.gov* under "Court Forms."
4. If you believe that you have insurance that may cover the claim that is being made against you in this lawsuit, you should immediately contact your insurance representative. Other action you may have to take is described in the Connecticut Practice Book which may be found in a superior court law library or on-line at *www.jud.ct.gov* under "Court Rules."
5. If you have questions about the Summons and Complaint, you should talk to an attorney quickly. The Clerk of Court is not allowed to give advice on legal questions.

| Signed *(Sign and "X" proper box)* | ☒ Commissioner of the Superior Court ☐ Assistant Clerk | Name of Person Signing at Left <br> Gerald S. Sack | Date signed <br> 3/22/2018 |
|---|---|---|---|

| If this Summons is signed by a Clerk: | For Court Use Only |
|---|---|
| a. The signing has been done so that the Plaintiff(s) will not be denied access to the courts. <br> b. It is the responsibility of the Plaintiff(s) to see that service is made in the manner provided by law. <br> c. The Clerk is not permitted to give any legal advice in connection with any lawsuit. <br> d. The Clerk signing this Summons at the request of the Plaintiff(s) is not responsible in any way for any errors or omissions in the Summons, any allegations contained in the Complaint, or the service of the Summons or Complaint. | File Date |

| I certify I have read and understand the above: | Signed *(Self-Represented Plaintiff)* | Date | Docket Number |
|---|---|---|---|

RETURN DATE: MAY 1, 2018

WILLIAM NESBITT                    :        SUPERIOR COURT
                                  :
       VS.                        :        JUDICIAL DISTRICT OF FAIRFIELD
                                  :
BRUCE BEMER                       :        MARCH 22, 2018

<u>**Complaint**</u>

<u>**COUNT ONE**</u>:  (Violation of Connecticut General Statutes §42-110a et seq.)

    1.    The plaintiff, William Nesbitt, is an adult, age twenty-seven, who resides in central

Connecticut.

    2.    The defendant, Bruce Bemer, is an individual who engaged in a continuous course of

depraved and corrupt business activity over many years, targeting vulnerable individuals for sexual

exploitation, and who willingly engaged in a conspiracy to sexually abuse and traffic individuals,

including plaintiff, throughout the State of Connecticut, for financial gain and/or sexual gratification

in lieu of or in addition to financial gain.  The defendant, upon information and belief, and an

opportunity for further discovery, has been infected with the HIV virus for decades and knowingly

engaged in unprotected sexual acts with the plaintiff without disclosure of the fact that he is/was

infected with HIV.

    3.    Beginning on or about March, 2010, until about November, 2014, the plaintiff was

involved in a relationship with the defendant, Bruce Bemer, in which the defendant would pay the

plaintiff to engage in lewd and perverted acts, sexual and otherwise, and would also ask the plaintiff

to attempt to recruit other young men to do likewise.

1

4.     During this time period, the plaintiff understood that the defendant was a wealthy and powerful man and felt powerless to refuse the defendant's requests. In addition, the defendant made it clear to the plaintiff, during the course of the relationship, that there would be serious negative repercussions to the plaintiff if the plaintiff disclosed to anyone, in particular the defendant's employees, the nature of the activities they engaged in, and the fact that plaintiff had been requested to recruit other young men to engage in such activities. As a result of the defendant's statements, the plaintiff felt threatened, intimidated and fearful and for those reasons, did not, before now, disclose the nature and extent of the lewd and perverted activities he engaged in at the defendant's direction.

5.     The defendant also represented to the plaintiff, while the relationship was ongoing, that he was not infected by any sexually transmitted disease, including HIV/AIDS.

6.     Between March, 2010, until about November, 2014, the defendant engaged in a pattern of illegal and prohibited racketeering activity for sexual purposes in violation of the Connecticut Corrupt Organizations and Racketeering Activity Act (CORA) (Connecticut General Statutes §53-393 et seq.).

7.     At all times relevant to this action, the defendant, in violation of CORA, engaged in racketeering activity, including committing, attempting to commit, conspiring to commit, or intentionally aiding, soliciting, coercing, or intimidating the plaintiff and others to commit extortion, assault, prostitution, including a violation of Connecticut General Statutes §53a-83(c)(2)(A), and/or coercion in violation of Connecticut General Statutes §53-394(a).

8.     At all times relevant to this action, the defendant, in violation of CORA, engaged in a pattern of racketeering activity including engaging in at least two incidents of racketeering activity

2

that (1) have the same or similar purposes, results, participants, victims, or methods of commission or otherwise are interrelated by distinguished characteristics; and (2) are not isolated incidents, all in violation of Connecticut General Statutes §42-110a et seq.

9.      At all times relevant to this action, the defendant, or members of his racketeering conspiracy, were engaged in the conduct of a trade or commerce as defined in the Connecticut Unfair Trade Practices Act ("CUTPA"), Connecticut General Statutes §42-110 a et seq.

10.      The acts of the defendant as set forth above, were oppressive, immoral, unscrupulous and in violation of public policy, including the policies set forth in CORA and Connecticut General Statutes §53a-83(c)(2)(A), amounting to an unfair trade practice in violation of CUTPA, Connecticut General Statutes §42-110b et seq.

11.      These acts of defendant, Bruce Bemer, or members of his racketeering conspiracy, have resulted in ascertainable loss to the plaintiff, including bodily invasion, and sexual abuse, that left him susceptible and as a target of the defendant's perverse criminal racketeering scheme.

**COUNT TWO:** (Violations of the Trafficking Victims Protection Act actionable pursuant to 18 U.S.C. §1595(a))

1-5.      Paragraphs 1 through 5 of Count One are hereby incorporated as paragraphs 1 through 5 of Count Two as if fully set forth herein.

6.      Between approximately 2010 and 2014, the defendant engaged in a pattern of illegal and prohibited human trafficking activity for purulent sexual purposes in violation of, and actionable under 18 U.S.C. § 1595(a), which have resulted in ascertainable loss to the plaintiff, including bodily invasion and sexual abuse, which have left him susceptible and as a target of the defendant's perverse criminal racketeering scheme.

3

**COUNT THREE:** (Assault and Battery)

1-5.   Paragraphs 1 through 5 of Count One are hereby incorporated as paragraphs 1 through 5 of Count Three as if fully set forth herein.

6.   Beginning in approximately March, 2010, the defendant lured the plaintiff to the defendant's office at New England Cycle Center, 73 Leibert Road, in Hartford, Connecticut, approximately fourteen (14) times, for purposes of sexual activity and related perverse acts and, on some of those occasions, sexually assaulted the plaintiff.

7.   As a result of the assaults on plaintiff by the defendant, the plaintiff sustained and suffered, and continues to suffer from, serious personal injuries, including, but not limited to, psychiatric and psychological injuries, severe emotional distress, anxiety, depression, shock, anger, feelings of guilt and self-blame, humiliation, sleep disturbances, and feelings of powerlessness. Some or all of these injuries and their effects are, or will likely prove to be, permanent in nature.

8.   As a further result, the plaintiff's ability to enjoy life and carry on his usual activities, hobbies and recreations has been impaired, and will likely continue to be impaired for the rest of his life.

9.   The injuries sustained and suffered by the plaintiff were a proximate result of the foregoing assault and battery committed by the defendant.

10.   As a further result, the plaintiff will likely be required to expend considerable sums of money for medical treatment, psychiatric therapy and psychological treatment, to his financial loss.

4

**COUNT FOUR:** (Reckless and Wanton Conduct)

    1-10.    Paragraphs 1 through 10 of Count Three are hereby incorporated as paragraphs 1 through 10 of Count Four as if fully set forth herein.

    11.    By luring the plaintiff to the defendant's office at New England Cycle Center on numerous occasions beginning on or about March, 2010, and by forcing him to take part in lewd sexual and other perverse acts, the defendant engaged in conduct that was in reckless and wanton disregard of plaintiff's rights.

**COUNT FIVE:** (Intentional Infliction of Emotional Distress)

    1-10.    Paragraphs 1 through 10 of Count Three are hereby incorporated as paragraphs 1 through 10 of Count Five as if fully set forth herein.

    11.    Beginning in approximately March, 2010, the defendant lured the plaintiff to the defendant's office at New England Cycle Center on at least twelve (12) occasions, forced him to take part in lewd sexual and other perverse conduct and to take money for it, and then threatened the plaintiff that if the plaintiff told anyone about the sexual encounters, the defendant would expose and humiliate the plaintiff.

    12.    The foregoing extreme and outrageous conduct by the defendant, which was intentional in nature, caused severe emotional distress to the plaintiff.

5

13.   As a result of the conduct of the defendant, the plaintiff will likely be forced to incur expenses for medical care, therapy and the like.

PLAINTIFF
WILLIAM NESBITT

By_____

    Gerald S. Sack
    Juris No. 423992
    Law Offices of Gerald S. Sack, LLC
    836 Farmington Avenue, Suite 109
    West Hartford, CT 06119
    860-236-7225
    gssack@sacklawoffice.com

**LAW OFFICES OF GERALD S. SACK, LLC**
836 FARMINGTON AVENUE, SUITE 109 • WEST HARTFORD, CT 06119 • (860) 236-7225 • JURIS NO. 423992

**APPEARANCE**
JD-CL-12 Rev. 1-12
P.B. §§ 3-1 thru 3-6, 3-8, 10-13, 25A-2

**STATE OF CONNECTICUT**
**SUPERIOR COURT**
*www.jud.ct.gov*

**Instructions** — *See Back/Page 2*

**Notice To Self-Represented Parties**
*A self-represented party is a person who represents himself or herself. If you are a self-represented party and you filed an appearance before and you have since changed your address, you must let the court and all attorneys and self-represented parties of record know that you have changed your address by checking the box below.*

☐ *I am filing this appearance to let the court and all attorneys and self-represented parties of record know that I have changed my address. My new address is below.*

| Return date |
| --- |
| May-01-2018 |
| Docket number |
| FBT-CV-18-6072685-S |

**Name of case** *(Full name of Plaintiff vs. Full name of Defendant)*

NESBITT, WILLIAM **v.** BEMER, BRUCE

| | | | | |
| --- | --- | --- | --- | --- |
| **☒** | ☐ | ☐ | ☐ | Address of Court *(Number, street, town and zip code)* |
| Judicial District | Housing Session | Small Claims | Geographic Area number | **1061 MAIN STREET BRIDGEPORT, CT 06604** |

Scheduled Court date *(Criminal/Motor Vehicle Matters)*

## Please Enter the Appearance of

| Name of self-represented party *(See "Notice to Self-Represented Parties" at top)*, or name of official, firm, professional corporation, or individual attorney | Juris number of attorney or firm |
| --- | --- |
| **BARRY BARALL & SPINELLA LLC** | **428935** |

| Mailing Address *(Number, street)* *(Notice to attorneys and law firms - The address to which papers will be mailed from the court is the one registered or affiliated with your juris number. That address cannot be changed in this form.)* | Post office box | Telephone number *(Area code first)* |
| --- | --- | --- |
| **202 WEST CENTER STREET 1ST FLOOR** | | **(860) 649-4400** |

| City/town | State | Zip code | Fax number *(Area code first)* | E-mail address |
| --- | --- | --- | --- | --- |
| **MANCHESTER** | **CT** | **06040** | **(860) 645-7900** | **rbarry@bbsattorneys.com** |

in the case named above for: *("x" one of the following parties; if this is a Family Matters case, also indicate the scope of your appearance)*

☐ The Plaintiff *(includes the person suing another person).*
☐ All Plaintiffs.
☐ The following Plaintiff(s) only: _____
☒ The Defendant *(includes the person being sued or charged with a crime).*
☐ The Defendant for the purpose of the bail hearing only *(in criminal and motor vehicle cases only).*
☐ All Defendants.
☐ The following Defendant(s) only: _____
☐ Other *(Specify):* _____
☐ This is a Family Matters case and my appearance is for: *("x" one or both)*
   ☐ matters in the Family Division of the Superior Court   ☐ Title IV-D Child Support matters

*Note: If other counsel or a self-represented party has already filed an appearance for the party or parties "x'd" above, put an "x" in box 1 or 2 below:*

1. ☐ This appearance is in place of the appearance of the following attorney, firm or self-represented party on file *(P.B. Sec. 3-8):* _____ *(Name and Juris Number)*

2. ☐ This appearance is in addition to an appearance already on file.

**I agree to accept papers (service) electronically in this case under Practice Book Section 10-13**   ☒ Yes   ☐ No

| Signed *(Individual attorney or self-represented party)* | Name of person signing at left *(Print or type)* | Date signed |
| --- | --- | --- |
| ▶ 418202 | **RYAN PATRICK BARRY** | **Apr 05 2018** |

## Certification

I certify that a copy of this document was mailed or delivered electronically or non-electronically on *(date)* **Apr 05 2018** to all attorneys and self-represented parties of record and that written consent for electronic delivery was received from all attorneys and self-represented parties receiving electronic delivery.

| Name and address of each party and attorney that copy was mailed or delivered to* | For Court Use Only |
| --- | --- |
| **SACK GERALD S. LAW OFFICES LLC - 836 FARMINGTON AVENUE/SUITE 109/WEST HARTFORD, CT 06119** | |

| Signed *(Signature of filer)* | Print or type name of person signing | Date signed | Telephone number |
| --- | --- | --- | --- |
| ▶ 418202 | **RYAN PATRICK BARRY** | **Apr 05 2018** | **8606494400** |

*If necessary, attach an additional sheet or sheets with the name of each party and the address which the copy was mailed or delivered to.

STATE OF CONNECTICUT:

: ss: MANCHESTER        MARCH 22, 2018

COUNTY OF HARTFORD  :

Then and by virtue hereof, and by direction of the Plaintiff's Attorney, I left a verified true and attested copy of the original WRIT, SUMMONS AND COMPLAINT, with and in the hands of RYAN P. BARRY, ESQUIRE, BARRY, BARALL SPINELLA, 202 WEST CENTER STREET, who agreed to accept service for the within named defendant **BRUCE BEMER,** in the said town of MANCHESTER, County of Hartford.

State of Connecticut
County of Hartford
Department of Administrative Services

The within is the original WRIT, SUMMONS AND COMPLAINT, with my doings thereon endorsed.

| | |
|---|---|
| Verified pages | $  8.00 |
| Endorsements | 1.20 |
| Service | 40.00 |
| Travel | 10.00 |
| Total | $59.20 |

ATTEST

KEITH NIZIANKIEWICZ
CT STATE MARSHAL
HARTFORD COUNTY

**KEITH D. NIZIANKIEWICZ**
*CONNECTICUT STATE MARSHAL*
PO BOX 280054 • EAST HARTFORD CONNECTICUT 06128-0054 • OFFICE: (860) 610-0205

DOCKET NO. FBT CV 18-6072685 S

| | | |
|---|---|---|
| WILLIAM NESBITT | : | SUPERIOR COURT |
| | : | |
| VS. | : | JUDICIAL DISTRICT OF FAIRFIELD |
| | : | |
| BRUCE BEMER | : | MARCH 23, 2018 |

### Motion to Consolidate

Pursuant to Practice Book §9-5, the plaintiff, William Nesbitt, moves to consolidate the instant action with 1) *Daniel Walsh, Conservator of the Person and Estate of John Doe v. Bruce Bemer and William Trefzger*, FBT CV 18-6070947 S, 2) *Michael Fleming v. Bruce Bemer, et al* Docket No. FBT CV 17-6068382 S, 3) *John Doe, et al v. Bruce Bemer, et al*, Docket No. FBT CV 17-5032881 S, and 4) *John Doe, et al v. Bruce J. Bemer, et al*, Docket No. FBT CV 17-5032760 S, all currently pending in the Judicial District of Fairfield at Bridgeport. All five cases arise out of the same factual setting. It therefore would conserve judicial time and resources and minimize costs for all parties for the cases to be managed and tried together.

In accordance with P.B. §9-5(b), all parties of record in all cases have been served with a copy of this motion.

PLAINTIFF
WILLIAM NESBITT

By____/s/ Gerald S. Sack_____
Gerald S. Sack
Juris No. 423992
Law Offices of Gerald S. Sack, LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
860-236-7225
gssack@sacklawoffice.com

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, via regular mail, facsimile or email, this 23rd day of March, 2018, to the following counsel of record:

Ryan Barry, Esquire
Barry, Barall & Spinella, LLC
202 West Center Street
Manchester, CT  06040
For the defendant, Bruce Bemer
860-649-4400; Fax: 860-645-7900
rbarry@bbsattorneys.com

Edward J. Gavin, Esquire
Law Offices of Edward J. Gavin
1087 Broad Street, 1st Floor Left
Bridgeport, Connecticut  06604
For the defendant, William Trefzger
203-347-7050; Fax: 203- 683-6555
ed@edgavinlaw.com

*John Doe, et al v. Bruce Bemer, et al*, Docket No. FBT CV 17-5032760 S
Joel Faxon, Esquire
Faxon Law Group, LLC
59 Elm Street
New Haven, CT  06510
For the plaintiffs
203-624-9500; Fax: 203-624-9100
jfaxon@faxonlawgroup.com

*John Doe, et al v. Bruce Bemer, et al*, Docket No. FBT CV 17-5032881 S
Kevin C. Ferry, Esquire
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT  06052
For the plaintiffs
860-827-0880; Fax:  860-827-9942
kevin@kevinferrylaw.com

*Fleming v. Bemer*, Docket No. FBT CV 17-6068382 S
Philip D. Russell, Esquire
Philip Russell, LLC
66 Field Point Road
Greenwich, Conn. 06830
For the plainiff
203-661-4200; Fax: 203- 661-3666
prussell@greenwichlegal.com

                                        /s/ Gerald S. Sack
                                        Gerald S. Sack

DOCKET NO. FBT CV 18-6072685 S

| | | |
|---|---|---|
| WILLIAM NESBITT | : | SUPERIOR COURT |
| | : | |
| VS. | : | JUDICIAL DISTRICT OF FAIRFIELD |
| | : | |
| BRUCE BEMER | : | MARCH 26, 2018 |

## Motion for Prejudgment Remedy

To the Superior Court for the Judicial District of Fairfield:

The undersigned represents:

1.    That William Nesbitt has filed suit in this Court in an action styled *William Nesbitt v Bruce Bemer*, Docket No. FBT CV 18-6072685 S, as on file.

2.    That there is probable cause that a judgment in the amount of the prejudgment remedy sought, or in an amount greater than the amount of the prejudgment remedy sought, taking into account any known defenses, counterclaims or set-offs, will be rendered in the matter in favor of the applicant and that to secure the judgment the applicant seeks an order from this court directing that the following prejudgment remedy be granted to secure the sum of $5,000,000.00:

a.    To attach sufficient real property or other assets owned by the defendant, Bruce Bemer to secure the Pre-Judgment remedy that is ordered by the Court.

1

3.    An Affidavit of William Nesbitt is submitted herewith.

PLAINTIFF
WILLIAM NESBITT


By____/s/ Gerald S. Sack_____
         Gerald S. Sack
         Juris No. 423992
         Law Offices of Gerald S. Sack, LLC
         836 Farmington Avenue, Suite 109
         West Hartford, CT 06119
         860-236-7225
         gssack@sacklawoffice.com

2

DOCKET NO. FBT CV 18-6072685 S

WILLIAM NESBITT             :     SUPERIOR COURT

                           :

     VS.                   :     JUDICIAL DISTRICT OF FAIRFIELD

                           :

BRUCE BEMER              :     MARCH 23, 2018

## AFFIDAVIT OF WILLIAM NESBITT

I, William Nesbitt, being duly sworn, hereby depose and say that:

1.    I am over the age of 18 years and understand the obligations and sanctity of an oath;

2.    I am familiar with the facts alleged in the Complaint, which has been served on the defendant, which facts and allegations are incorporated by reference herein, and affirm that those facts are true and accurate to the best of my knowledge and belief;

3.    From March, 2010, until about November, 2014, I was involved in a relationship with the defendant, Bruce Bemer, in which he would pay me to engage in lewd and perverted acts, sexual and otherwise.

4.    The defendant also asked me to recruit other young men to have sex with the defendant for money.

5.    I understood that the defendant was a wealthy and powerful man and felt powerless to refuse his requests.

6.    During the course of our relationship, the defendant made it clear to me that there would be serious negative repercussions for me if I disclosed to anyone the nature of the activities the defendant engaged in with me and other young men, as well as the fact that he had asked me to recruit other young men to have sex with him.

3

7.     I felt threatened, intimidated and fearful and for those reasons, did not, before now, disclose the nature and extent of the lewd and perverted activities I engaged in at the defendant's direction.

8.     The defendant also represented to me that the defendant had been tested and was not infected by any sexually transmitted diseases, including HIV/AIDS.

9.     Due to the defendant's conduct, I have sustained serious personal injuries, including, but not limited to, psychiatric and psychological injuries, severe emotional distress, anxiety, depression, shock, anger, feelings of guilt and self-blame, humiliation, sleep disturbances, and feelings of powerlessness

The foregoing information is true and accurate to the best of my knowledge and belief.

_____
William Nesbitt

STATE OF CONNECTICUT     :
                         :     ss:
COUNTY OF                :

Subscribed and sworn to before me this 23 day of March, 2018.

_____
Commissioner of Superior Court
Notary Public
My Commission Expires: 3/31 2020

4

**LAW OFFICES OF GERALD S. SACK, LLC**
836 FARMINGTON AVENUE, SUITE 109 • WEST HARTFORD, CT 06119 • (860) 236-7225 • JURIS NO. 423992

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed, via regular mail, facsimile or email, this 26th day of March, 2018, to the following counsel of record:

Ryan Barry, Esquire
Barry, Barall & Spinella, LLC
202 West Center Street
Manchester, CT  06040
For the defendant, Bruce Bemer
860-649-4400; Fax: 860-645-7900
rbarry@bbsattorneys.com

Edward J. Gavin, Esquire
Law Offices of Edward J. Gavin
1087 Broad Street, 1st Floor Left
Bridgeport, Connecticut  06604
For the defendant, William Trefzger
203-347-7050; Fax: 203- 683-6555
ed@edgavinlaw.com

*John Doe, et al v. Bruce Bemer, et al,* Docket No. FBT CV 17-5032760 S
Joel Faxon, Esquire
Faxon Law Group, LLC
59 Elm Street
New Haven, CT  06510
For the plaintiffs
203-624-9500; Fax: 203-624-9100
jfaxon@faxonlawgroup.com

*John Doe, et al v. Bruce Bemer, et al,* Docket No. FBT CV 17-5032881 S
Kevin C. Ferry, Esquire
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT  06052
For the plaintiffs
860-827-0880; Fax:  860-827-9942
kevin@kevinferrylaw.com

3

*Fleming v. Bemer*, Docket No. FBT CV 17-6068382 S
Philip D. Russell, Esquire
Philip Russell, LLC
66 Field Point Road
Greenwich, Conn. 06830
For the plainiff
203-661-4200; Fax: 203- 661-3666
prussell@greenwichlegal.com

      /s/ Gerald S. Sack
      Gerald S. Sack

4

DOCKET NOS. FBT-CV-17-5032760-S          :          SUPERIOR COURT
     FBT-CV-17-5032881-S          :
     FBT-CV-17-6068382-S          :
     FBT-CV-18-6070947-S          :          J.D. OF FAIRFIELD
     FBT-CV-18-6072685-S          :          AT BRIDGEPORT

JOHN DOE, ET AL.          :

V.          :

BRUCE J. BEMER, ET AL.          :          APRIL 5, 2018

## MOTION TO FILE DOCUMENTS UNDER SEAL

Pursuant to Practice Book §§ 7-4B, 7-4C and 11-20A, Defendant Bruce J. Bemer ("Mr. Bemer") hereby moves to file under seal: (1) unredacted versions of the Parties' forthcoming Joint Motion for Order of Stipulated Prejudgment Relief (the "Joint Motion"); (2) the Stipulated Prejudgment Relief Order attached as Exhibit A to the Joint Motion (the "Order"); and (3) Exhibits 1 through 4 to the Order (collectively, "Confidential Documents").

As explained in the accompanying Memorandum of Law, the Confidential Documents contain highly sensitive, confidential financial information outlining certain of Mr. Bemer's account numbers, ownership interests in various entities, and other assets. As also discussed in the accompanying Memorandum of Law, the privacy interest in this sensitive, confidential information outweighs any public interest in access to these materials.

Pursuant to Practice Book §§ 7-4B, 7-4C and 11-20A, Mr. Bemer has e-filed redacted versions of the Confidential Documents as <u>Exhibit 1</u> to the accompanying Memorandum of Law, and has lodged with the Court the original unredacted Confidential Documents. Pursuant to Practice Book § 11-20A(e) and (f), Mr. Bemer respectfully asks that the Court schedule a hearing on this motion not less than fifteen days after the filing of this motion.

Counsel have conferred, and the plaintiffs in the above-captioned actions consent to the relief requested.

WHEREFORE, for the foregoing reasons and the reasons set forth in the accompanying Memorandum of Law, Mr. Bemer respectfully requests that the Court allow the Confidential Documents to be filed under seal.

DEFENDANT,
BRUCE J. BEMER

By: /s/ Ryan P. Barry
Ryan P. Barry
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040
T: 860-649-4400
F: 860-645-7900
E: rbarry@bbsattorneys.com
Juris No. 428935

2

## CERTIFICATION

I hereby certify that a copy of the above was mailed or electronically delivered on this 5th day of April 2018, to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were electronically served:

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P: (203) 624-9500
F: (203) 624-9100
E: jfaxon@faxonlawgroup.com
(Plaintiffs - Edward Barron, et al.)

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P: (860) 827-0880
F: (860) 827-9942
E: kevin@kevinferrylaw.com
(Plaintiffs - John Doe et al.)

Gerald S. Sack, Esq.
Law Offices of Gerald S. Sack, LLC
836 Farmington Avenue
West Hartford, CT 06119
P: (860) 236-7225
F: (860) 231-8114
E: gssack@sacklawoffice.com
(Plaintiff - Daniel Walsh, Conservator)

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com
(Plaintiff - Michael Fleming)

Edward J. Gavin, Esq.
Law Offices of Edward J. Gavin
1087 Broad Street, 1st Floor Left
Bridgeport, CT 06604
P: (203) 347-7050
F: (203) 683-6555
E: ed@edgavinlaw.com
(Defendant - William Trefzger)

Commissioner of the Superior Court

DOCKET NOS. FBT-CV-17-5032760-S                  :        SUPERIOR COURT
                FBT-CV-17-5032881-S                  :
                FBT-CV-17-6068382-S                  :
                FBT-CV-18-6070947-S                  :        J.D. OF FAIRFIELD
                FBT-CV-18-6072685-S                  :        AT BRIDGEPORT
                                   :

JOHN DOE, ET AL.                                          :

V.                                                       :

BRUCE J. BEMER, ET AL.                                   :        APRIL 5, 2018

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO FILE DOCUMENTS UNDER SEAL

      Pursuant to Practice Book §§ 7-4B, 7-4C, and 11-20A, Defendant Bruce J. Bemer ("Mr.

Bemer") respectfully submits this memorandum in support of his motion to file documents under

seal.

### DISCUSSION

      The presumption of public access to court proceedings and records is not absolute. See

Rosado v. Bridgeport Roman Catholic Diocesan Corp., 292 Conn. 1, 34 (2009). "When the

public's interest in judicial monitoring is outweighed by countervailing considerations, such as

certain privacy concerns . . . court documents or proceedings may be shielded from public view."

Id. at 35 (internal citation omitted). Section 11-20A of the Practice Book governs the process and

requirements for sealing court documents and records. Under section 11-20A, the Court must

balance the interests at stake and, when "necessary to preserve an interest which is determined to

override the public's interest in viewing such materials," enter an order sealing the documents at

issue. See Practice Book § 11-20A(c); see also Rosado, 292 Conn. at 53, fn. 35.

      Here, the Parties' Joint Motion for Order of Stipulated Prejudgment Relief (their "Joint

Motion"), the Stipulated Prejudgment Relief Order attached as Exhibit A to the Joint Motion (the

"Order"), and Exhibits 1 through 4 to the Order (together, the "Confidential Documents") contain

highly confidential information concerning Mr. Bemer's personal financial affairs. For three reasons, the Court should grant this motion and take the Confidential Documents under seal.

First, the information to be sealed is extremely sensitive, and Mr. Bemer's interest in its confidentiality is accordingly strong. As their lodged, unredacted versions show, the Joint Motion, the Order, and the Order's exhibits contain information detailing various entities in which Mr. Bemer owns an interest, various accounts in which he holds cash and securities, and certain other assets he owns, both directly and indirectly. If not redacted appropriately, these documents would publicize a roadmap to Mr. Bemer's confidential financial affairs. The public has a minimal interest, if any, in learning the details of Mr. Bemer's private financial life. *Cf.* Practice Book § 11-20B (requiring redaction of personal identifying information and authorizing sanctions for noncompliance).

Second, the information to be sealed is irrelevant to this action's determinative issues. The confidential details of Mr. Bemer's private finances simply do not bear on whether the plaintiffs' allegations are true or Mr. Bemer's defenses are sound. *Cf.* Metal Management, Inc. v. Schiavone, 514 F.Supp.2d 227, 239-40 (D. Conn. 2007) (declining to order disclosure of financial information that "[bore no] relation to [plaintiffs'] application for relief"). And, in addition, Mr. Bemer has narrowly tailored his redactions in order to protect the sensitive financial information filed, and no more. *Cf.* Practice Book § 11-20A(c) (counseling that order sealing documents "be no broader than necessary to protect" overriding interest). Redacted versions of the Confidential Documents – the versions that will be filed publicly if this motion to seal is granted – are attached to this memorandum as Exhibit 1.

Third, the parties have filed Mr. Bemer's sensitive financial information in order to streamline this litigation and serve the Court's important interest in judicial economy. Rather than litigating whether prejudgment relief should enter, or its size, the parties agreed that Mr. Bemer

2

would provide $25 million security for any potential plaintiff's recovery. To prepare a clear, effective Order putting this security in place, the parties needed to discuss Mr. Bemer's sensitive personal financial information – and they did, after all parties to these actions agreed that this information would remain confidential. Incorporating certain details of Mr. Bemer's confidential financial affairs into the Order has made it clearer, more administrable, and more useful to a negotiated resolution that preserves the Court's scarce adjudicative resources. This settlement-related confidential information comes with no "presumption of access," and provides "clear and compelling" grounds for a sealing order. *Cf, e.g.*, Travelers Indem. Co. v. Excalibur Reinsurance Corp., 2013 WL 4012772 at -8 (D. Conn. Aug. 5, 2013).

In this case, any public interest in access to Mr. Bemer's sensitive and personal financial information is heavily outweighed by the interests in keeping that information confidential.

For these reasons, Mr. Bemer respectfully requests that the Confidential Documents be filed under seal.

DEFENDANT,
BRUCE J. BEMER

By: */s/ Ryan P. Barry*
    Ryan P. Barry
    Barry, Barall & Spinella, LLC
    202 West Center Street, 1st Floor
    Manchester, CT 06040
    T: 860-649-4400
    F: 860-645-7900
    E: rbarry@bbsattorneys.com
    Juris No. 428935

## **CERTIFICATION**

I hereby certify that a copy of the above was mailed or electronically delivered on this 5th day of April 2018, to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were electronically served:

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P: (203) 624-9500
F: (203) 624-9100
E: jfaxon@faxonlawgroup.com
(Plaintiffs - Edward Barron, et al.)

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P: (860) 827-0880
F: (860) 827-9942
E: kevin@kevinferrylaw.com
(Plaintiffs - John Doe et al.)

Gerald S. Sack, Esq.
Law Offices of Gerald S. Sack, LLC
836 Farmington Avenue
West Hartford, CT 06119
P: (860) 236-7225
F: (860) 231-8114
E: gssack@sacklawoffice.com
(Plaintiff - Daniel Walsh, Conservator)

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com
(Plaintiff - Michael Fleming)

Edward J. Gavin, Esq.
Law Offices of Edward J. Gavin
1087 Broad Street, 1st Floor Left
Bridgeport, CT 06604
P: (203) 347-7050
F: (203) 683-6555
E: ed@edgavinlaw.com
(Defendant - William Trefzger)


Commissioner of the Superior Court

# EXHIBIT 1

DOCKET NOS. FBT-CV-17-5032760-S      :     SUPERIOR COURT
             FBT-CV-17-5032881-S      :
             FBT-CV-17-6068382-S      :
             FBT-CV-18-6070947-S      :     J.D. OF FAIRFIELD
             FBT-CV-18-6072685-S      :     AT BRIDGEPORT
                                         :

JOHN DOE, ET AL.                       :

V.                                        :
                                         :      _____, 2018
BRUCE J. BEMER, ET AL.            :

## JOINT MOTION FOR ORDER
## OF
## STIPULATED PREJUDGMENT RELIEF

The Parties jointly request that the Court enter an order awarding the prejudgment relief

described herein.  The Parties request this relief in order to resolve plaintiffs' applications for

prejudgment remedies as to defendant Bruce J. Bemer ("Bemer").  In support of this motion, the

Parties state the following:

       1.       Consolidated before the Court are five actions naming Bemer as a defendant: (i)

the action entitled Doe v. Bemer, No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action

entitled Doe v. Bemer, No. FBT-cv-17-5032881-S (the "-81 Action"), (iii) the action entitled

Fleming v. Bemer, No. FBT-cv-17-6068382-S (the "-82 Action"), (iv) the action entitled Walsh

v. Bemer, No. FBT-cv-18-6070947-S (the "-47 Action"), and (v) the action entitled Nesbitt v.

Bemer, No. FBT-cv-18-6072685-S (the "-85 Action").  Together, these actions are referred to as

the "Consolidated Actions."

       2.       All plaintiffs in the Consolidated Actions (collectively, across all Consolidated

Actions, "Plaintiffs") have asserted claims against Bemer and have applied for prejudgment

remedies as to Bemer.  Following discussions in December, 2017 and January, 2018, counsel for

Bemer and Plaintiffs (together, the "Parties") have agreed that Bemer would pledge

approximately $25 million of assets to secure any potential judgments against him in the

Consolidated Actions, and in return, no further prejudgment relief would enter against Bemer.

3.      Pursuant to their agreement, the Parties request that the Court enter a stipulated

order for prejudgment relief in the form attached hereto as Exhibit A (the "Stipulated

Prejudgment Relief Order").[1]  The Stipulated Prejudgment Relief Order requires that Bemer

provide security in real property, corporate equity, loans receivable, a deposit account, and a

brokerage account.

4.      Specifically, Bemer is providing the Plaintiffs with:

   a.   Mortgages in twenty-one properties owned by Bemer directly or indirectly.  As to

        properties owned indirectly, appropriate corporate documentation authorizing the

        mortgages will be provided.

   b.   A security agreement pledging the capital stock of several corporations owned by

        Bemer;

   c.   A security interest in a demand deposit account with the balance of ███████;

        and

   d.   Security in Bemer's brokerage account.

5.      The Stipulated Prejudgment Relief Order also (i) denies as moot the applications

for prejudgment remedies as to Bemer, and (ii) provides that no further prejudgment relief as to

Bemer will be sought or enter in any of the Consolidated Actions.

6.      Because the proposed attachment, by agreement, was not divided among the

Plaintiffs, the documents providing prejudgment security will name Attorney Michael Rice as a

pledge agent.  Should a final, nonappealable judgment enter against Bemer in a Consolidated

---

[1] Except as provided in the Stipulated Prejudgment Relief Order, the Parties respectfully reserve their ability to
prosecute and defend the Consolidated Actions in all ways, including, without limitation, by removing to a United
States District Court any claims properly removable.

Action, the pledge agent may be directed to make available the security for satisfaction of such judgment.

      7.     Awarding the relief requested herein will facilitate resolution of the Parties' dispute over what prejudgment relief should enter in the Consolidated Actions, thus streamlining this litigation and conserving the Court's resources.

      **WHEREFORE,** the Parties respectfully request the Court grant this motion and enter the Stipulated Prejudgment Relief Order.


PLAINTIFFS,
JOHN DOE; ADAM DOE; AND BOB DOE


By: _____
    Kevin C. Ferry, Esq.
    Law Office of Kevin C. Ferry, LLC
    77 Lexington Street
    New Britain, CT 06052
    P: (860) 827-0880
    F: (806) 827-9942
    E: kevin@kevinferrylaw.com


PLAINTIFFS,
EDWARD BARRON, CONSERVATOR OF THE E/O D.T.; CAROL A. COLLINS ADMINISTRATRIX OF THE E/O JONATHAN CONETTA; JUSTIN LEWIS, CONSERVATOR OF THE PERSON AND E/O OF T.M.; MICHAEL & LINDA MARINO CO-ADMINISTRATORS OF THE E/O SAMUEL MARINO; JOHN DOE #1; JOHN DOE #2; AND JOHN DOE #3


By: _____
    Joel Faxon, Esq.
    Faxon Law Group, LLC
    59 Elm Street
    New Haven, CT 06510
    P: (203) 624-9500
    F: (203) 624-9100
    E: jfaxon@faxonlawgroup.com

PLAINTIFF,
MICHAEL FLEMING

PLAINTIFF,
DANIEL WALSH CONSERVATOR OF THE
PERSON AND E/O JOHN DOE

By: _____

    Philip D. Russell, Esq.
    Philip Russell, LLC
    66 Field Point Road
    Greenwich, CT 06830
    P: (203) 661-4200
    F: (203) 661-3666
    E: efile@greenwichlegal.com

By: _____

    Gerald S. Sack, Esq.
    Gerald S. Sack Law Offices LLC
    836 Farmington Avenue, Suite 109
    West Hartford, CT 06119
    T: 860-236-7225
    E: gssack@sacklaw.com
    Juris No. 423992

PLAINTIFF,
WILLIAM NESBITT

DEFENDANT,
BRUCE J. BEMER

By: _____

    Gerald S. Sack, Esq.
    Gerald S. Sack Law Offices LLC
    836 Farmington Avenue, Suite 109
    West Hartford, CT 06119
    T: 860-236-7225
    E: gssack@sacklaw.com
    Juris No. 423992

By: _____

    Ryan P. Barry
    Barry, Barall & Spinella, LLC
    202 West Center Street, 1st Floor
    Manchester, CT 06040
    T: 860-649-4400
    F: 860-645-7900
    E: rbarry@bbsattorneys.com
    Juris No. 428935

## **CERTIFICATION**

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on _____, 2018, to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served.

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P: (860) 827-0880
F: (806) 827-9942
E: kevin@kevinferrylaw.com

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P: (203) 624-9500
F: (203) 624-9100
E: jfaxon@faxonlawgroup.com

Edward J. Gavin
1087 Broad Street, 1st Fl.
Bridgeport, CT  06604
T: 203-347-7050
F: 203-683-6555
E: ed@edgavinlaw.com

Philip D. Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com

Gerald S. Sack, Esq.
Gerald S. Sack Law Offices LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
T: 860-236-7225
E: gssack@sacklaw.com

Ryan P. Barry
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040
T: 860-649-4400
F: 860-645-7900
E: rbarry@bbsattorneys.com

5

# EXHIBIT A
to the Joint Motion for Order
of
Stipulated Prejudgment Relief

DOCKET NOS. FBT-CV-17-5032760-S  :  SUPERIOR COURT
　　　　　　　 FBT-CV-17-5032881-S  :
　　　　　　　 FBT-CV-17-6068382-S  :
　　　　　　　 FBT-CV-18-6070947-S  :  J.D. OF FAIRFIELD
　　　　　　　 FBT-CV-18-6072685-S  :  AT BRIDGEPORT
　　　　　　　　　　　　　　　　　　　 :
JOHN DOE, ET AL.　　　　　　　　　 :
　　　　　　　　　　　　　　　　　　　 :
V.　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　 :
BRUCE J. BEMER, ET AL.　　　　　　 :

## STIPULATED PREJUDGMENT RELIEF ORDER

WHEREAS, five actions naming Bruce J. Bemer ("Bemer") as a defendant have been

consolidated before this Court (the "Consolidated Actions"): (i) the action entitled Doe v. Bemer,

No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled Doe v. Bemer, No. FBT-

cv-17-5032881-S (the "-81 Action"), (iii) the action entitled Fleming v. Bemer, No. FBT-cv-17-

6068382-S (the "-82 Action"), (iv) the action entitled Walsh v. Bemer, No. FBT-cv-18-6070947-

S (the "-47 Action"), and (v) the action entitled Nesbitt v. Bemer, No. FBT-cv-18-6072685-S

(the "-85 Action");

WHEREAS, all plaintiffs in the Consolidated Actions ("Plaintiffs") have asserted claims

against Bemer;

WHEREAS, all plaintiffs in the Consolidated Actions have applied for prejudgment

remedies as to Bemer; and

WHEREAS, Plaintiffs and Bemer (together, the "Parties") have stipulated to the amount

and form of security to be provided for any judgments entered against Bemer in the Consolidated

Actions, and have filed a Joint Motion for Order of Stipulated Prejudgment Relief on [DATE],

2018 (the "Motion");

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED that the Motion is GRANTED and that this Stipulated Prejudgment Relief Order (this "Order") is hereby entered.

(1)     Within fifteen days of the entry of this Order, Bemer shall provide security in the following real estate (the "Real Estate") by directing the land-owning entities ("Real Estate Owners") to execute mortgages for the benefit of the Plaintiffs through the Pledge Agent identified in Exhibit 1A, a mortgage pledge agreement concerning such mortgages, and statements of consent.  Such mortgages shall be in the forms accompanying this Order as Exhibit 1 (the "Mortgages"), such mortgage pledge agreement shall be in the form accompanying this Order as Exhibit 1A (the "Mortgage Pledge Agreement"), and such statements of consent shall be in the form accompanying this Order as Exhibit 1B (the "Statements of Consent").  Such documents shall allow resort to such real property for foreclosure should both (i) final judgment enter against Bemer in a Consolidated Action and (ii) such final judgment against Bemer no longer be subject to any appeal.





(x)      ████████████████████████████ ;

(xi)      ████████████████████████████ ;

(xii)      ██████████████████████ ;

(xiii)      ██████████████████████ ;

(xiv)      ██████████████████████ ;

(xv)      ██████████████████████ ;

(xvi)      █████████████████████ ;

(xvii)      ███████████████████████████ ;

(xviii)      ███████████████████████████ ;

(xix)      ████████████████████████████ ;

(xx)      █████████████████████████ ; and

(xxi)      █████████████████████ .

(2)     Within fifteen days of the entry of this Order, Bemer shall provide security in 100% of the capital stock ("Capital Stock") of the following corporations (the "Corporations") by way of an agreement executed by Bemer for the benefit of the Plaintiffs through the Pledge Agent identified in Exhibit 2 (the "Security Pledge Agreement"). The Security Pledge Agreement shall be in the form accompanying this Order as Exhibit 2, and shall allow resort to the Capital Stock of the Corporations should both (i) final judgment enter against Bemer in a Consolidated Action and (ii) such final judgment against Bemer no longer be subject to any appeal:

(i)       ; and

(ii)      ██████████████

(3)     Within fifteen days of the entry of this Order, Bemer shall provide security in the

note by ▬▬▬▬▬▬▬▬▬ payable in a total amount of ▬▬▬▬ and

receivable by Bemer (the "Note Receivable") by way of an agreement executed by Bemer for the

benefit of the Plaintiffs through the Pledge Agent identified in Exhibit 3 (the "Collateral

Assignment Agreement").  The Collateral Assignment Agreement shall be in the form

accompanying this Order as Exhibit 3, and shall allow resort to the Note Receivable should both

(i) final judgment enter against Bemer in a Consolidated Action and (ii) such final judgment

against Bemer no longer be subject to any appeal.

(4)     Within fifteen days of the entry of this Order, Bemer shall provide security in a

demand deposit account with a balance of ▬▬▬▬ (the "Deposit Account") by way of the

Security Pledge Agreement (Exhibit 2) and a deposit account control agreement.  The Security

Agreement shall allow resort to the Deposit Account should both (i) final judgment enter against

Bemer in a Consolidated Action and (ii) such final judgment against Bemer no longer be subject

to any appeal.

(5)     (a)     Effective on entry of this Order, as further security for Plaintiffs' claims in

the Consolidated Actions, and in accordance with the order attached as Exhibit 4, Bemer shall

provide security in the securities held in his brokerage account, Account No. ▬▬▬▬ with

▬▬▬▬▬▬ (the "Brokerage Account") or any successor brokerage account(s) into

which a Permitted Transfer (defined below) is made.  Except as otherwise provided in this

Paragraph (5), Bemer shall hold and retain all assets held in the Brokerage Account (the

"Brokerage Account Holdings") in whatever form they are currently held, and Bemer is hereby

enjoined and restrained from transferring, withdrawing, removing, dissipating, encumbering,

pledging, assigning, disposing of, or otherwise intentionally reducing the value of the Brokerage Account Holdings.

      (b)   Notwithstanding any provisions of Paragraph (5)(a) to the contrary, Bemer shall be permitted to cause normal and customary transactions in Brokerage Account Holdings, including but not limited to: (i) sales and purchases of securities (including, but not limited to stocks and bonds) or like investment vehicles, including purchases made on margin in accordance with industry custom and practice, (ii) sales of securities from which proceeds are used to pay capital calls on Brokerage Account Holdings, (iii) sales of securities from which proceeds are used to repay a margin loan secured by Brokerage Account Holdings, (iv) sales of securities from which proceeds are used to pay reasonable fees for investment management services for the Brokerage Account Holdings, and (v) sales of securities from which proceeds are used to pay taxes imposed with respect to Brokerage Account Holdings.

      (c)   Notwithstanding any provisions of Paragraph 5(a) to the contrary, Bemer shall be permitted to (A) transfer the Brokerage Account Holdings to an entity in which Bemer owns, directly or indirectly, a 100% beneficial interest, and/or (B) transfer the Brokerage Account Holdings to an account with another broker (either or both of (A) and/or (B), a "Permitted Transfer"). Should Bemer make a Permitted Transfer: (i) the provisions of Subparagraphs 5(a)-(c) shall continue to apply as they did to the Brokerage Account Holdings, and (ii) on entry of any Nonappealable Judgment against Bemer, Bemer shall be precluded from contending that the provisions of Conn. Gen. Stat. § 34-259b(e) apply as to any entity into which a Permitted Transfer is made.

(d)     Within fifteen days of the entry of this Order, Bemer shall serve a copy of

the order attached as Exhibit 4 on ████████████████ and, within fifteen days of any

Permitted Transfer, on any brokerage to which a Permitted Transfer is made.

(6)     (a)     (i)     On entry in a Consolidated Action of final judgment against Bemer

no longer subject to any appeal (such judgment, a "Nonappealable Judgment"), the Court may

direct the Pledge Agent identified in Exhibits 1A, 2, and 3 to disburse to any Plaintiff, in

satisfaction of a Nonappealable Judgment, security in (i) the Real Estate, (ii) the Capital Stock in

the Corporations, (iii) the Note Receivable, or (iv) the Deposit Account, to the extent that such

security, (i), (ii), (iii), or (iv), is sufficient to satisfy such Nonappealable Judgment.

(ii)     Notwithstanding any provisions of Paragraph (5) to the contrary, if

a judgment enters against Bemer in a Consolidated Action, the Court may, on request by Bemer,

authorize Bemer to withdraw sufficient Brokerage Account Holdings (or holdings in another

brokerage account into which a Permitted Transfer is made) to pay such judgment liability.  The

Brokerage Account Holdings are otherwise subject to execution under Chapter 906 of the

Connecticut General Statutes on entry of a Nonappealable Judgment.

(b)     (i)     Notwithstanding any provisions of Paragraphs (1)-(4) to the

contrary, on compromise of a claim asserted in the Consolidated Actions and upon request by

Bemer and the compromising Plaintiff, the Court will direct the Pledge Agent identified in

Exhibits 1A, 2, and 3 to release security in requested (i) Real Estate, (ii) Capital Stock in the

Corporations, (iii) Note Receivable, or (iv) portions of the Deposit Account (such asset(s) as to

which security release is requested, the "Releasable Assets"), in order to pay a Plaintiff in

accordance with such compromise or to reduce the amount or type of security being held

pursuant to this Order to account for payment of a compromised claim by funds not subject to

this Order, provided that the value of such Releasable Assets does not so unreasonably exceed the amount of such payment in compromise as to materially prejudice any Plaintiffs still asserting claims in the Consolidated Actions.

(ii)     Notwithstanding any provisions of Paragraph (5) to the contrary, on compromise of a claim asserted in the Consolidated Actions and upon request by Bemer, the Court will permit Bemer to withdraw sufficient Brokerage Account Holdings (or holdings in another brokerage account into which a Permitted Transfer is made) to pay a Plaintiff in accordance with such compromise.

(c)     The Parties will be given notice and an opportunity to be heard before the Pledge Agent identified in Exhibits 1A, 2, and 3 is directed in accordance with Paragraph (6)(a)(i) or (6)(b)(i).

(7)     (a)     Bemer may move to modify the terms of this Order.  Without limiting Bemer's ability in this regard, Bemer may move to modify the terms of this Order (i) in order to substitute new security for the security given under this Order, (ii) in order to reduce the amount of security given in view of changed circumstances in the Consolidated Actions, or (iii) should the value of the security given under this Order significantly increase, as contemplated by Paragraph 7(b) or otherwise.

(b)     By the last day of each January, April, July, and October, Bemer shall provide Plaintiffs with the following: (i) the most recently-available statement showing the balance of the Deposit Account, and (ii) the most recently-available statement showing the value of the holdings in the Brokerage Account or any successor brokerage account(s) into which a Permitted Transfer is made.  Bemer shall mail such statements to Joel Faxon, Esq., Faxon Law Group, LLC, 59 Elm Street, New Haven, CT, or send them electronically to

7

jfaxon@faxonlawgroup.com. Should the sum of the values of both items of security ((i) and (ii)) total less than ▮▮▮▮▮, Plaintiffs may move to modify the terms of this Order so as to require that Bemer post additional security to the extent of the difference between this sum (again, (i) and (ii)) and ▮▮▮▮▮. Should the sum of the values of both items of security ((i) and (ii)) total more than ▮▮▮▮▮, Bemer may move to modify the terms of this Order so as to permit the release of security to the extent of the difference between this sum (again, (i) and (ii)) and ▮▮▮▮▮.

(c) The Parties will be given notice and an opportunity to be heard before the terms of this Order are modified.

(8) Provided that Bemer remains in compliance with Paragraphs 1-5 of this Order, no Plaintiff may conduct asset discovery as to Bemer unless and until such Plaintiff has secured a Nonappealable Judgment against Bemer.

(9) This Order shall constitute the exclusive prejudgment remedy as against Bemer in the Consolidated Actions. Recognizing that this Order effects a compromise of disputed applications for prejudgment remedies, (i) no Plaintiff may seek prejudgment relief as to other assets of Bemer not treated by this Order, and (ii) no Plaintiff may seek to expand the scope of the prejudgment relief effected by this Order, including, without limitation, by (A) seeking to impair the Corporations' ability to use their assets, so long as such use is not prohibited by the Security Pledge Agreement, (B) impair the ability of the Real Estate Owners to occupy, manage and operate the Real Estate as they ordinarily would without the existence of this Order or (C) otherwise seeking to expand their rights with respect to the Real Estate, Capital Stock, Note Receivable, Deposit Account or Brokerage Account beyond those rights afforded herein.

8

(10)   The Plaintiffs' applications for prejudgment remedies as to Bemer (Entry No. 100.31 in the -60 Action, Entry No. 100.31 in the -81 Action, Entry No. 117.00 in the -82 Action, Entry No. 106.00 in the -47 Action, and Entry No. 102.00 in the -85 Action) and motions for prejudgment disclosure of assets by Bemer (Entry No. 100.35 in the -60 Action, Entry No. 100.35 in the -81 Action, and Entry No. 118.00 in the -82 Action) are hereby denied as moot.

(11)   If not earlier vacated by the Court, this Order shall be vacated automatically as of the earliest of the following dates:

(a)   The first date on which all claims against Bemer in the Consolidated Actions have been withdrawn;

(b)   The first date on which, as to all claims against Bemer in the Consolidated Actions, both (i) final judgment for Bemer has entered and (ii) such judgment is not subject to further appeal (that is, such claims have been "Finally Dismissed");

(c)   The first date on which, as to all claims against Bemer in the Consolidated Actions, both (i) final judgment has entered against Bemer and (ii) Bemer has satisfied such judgment liability (that is, such claims have been "Fully Satisfied"); or

(d)   The first date on which all claims against Bemer in the Consolidated Action have been (i) withdrawn, (ii) Finally Dismissed, or (iii) Fully Satisfied.

It is so ordered.

Signed this _____ day of _____, 2018 at Bridgeport, Connecticut.

_____

Connecticut Superior Court Judge

**Exhibit 1**

Record and Return to:

Jacobs, Walker, Rice & Barry, LLC
146 Main Street
Manchester, CT 06042
Attention: Michael J. Rice, Esq.

## OPEN-END MORTGAGE DEED, ASSIGNMENT OF RENTS AND LEASES, SECURITY AGREEMENT AND FIXTURE FILING
### (Connecticut)

[█████████████████████████████], a Connecticut limited liability company, having its mailing address at [_____] (hereinafter called the "**Grantor**"), for the consideration of Ten Dollars ($10.00) and other good and valuable consideration received to the full satisfaction of **MICHAEL J. RICE**, having an office at Jacobs, Walker, Rice & Barry, LLC, 146 Main Street, Manchester, CT 06042 Connecticut (the "Grantee") does hereby give, grant, bargain, sell, alienate, assign, pledge, mortgage, warrant, convey and confirm unto the said Grantee, its successors and assigns, forever, WITH MORTGAGE COVENANTS, the following property, interests and rights (collectively, the "**Mortgaged Property**"):

That certain piece or parcel of land, with all buildings and improvements now or hereafter placed thereon, known as [██████████████████████], and more particularly described in **Schedule A** annexed hereto and made a part hereof (collectively, the "**Premises**"), together with the following:

(a)     All the right, title and interest of the Grantor, now or hereafter acquired, in or to the land lying in the bed of any street, road or avenue, opened or proposed, and any and all sidewalks, plazas, alleys, strips and gores, in front of, adjoining or adjacent to the Premises; and any and all privileges, tenements, hereditaments, licenses, easements, rights, royalties, mineral, oil and gas rights, rents, issues and profits, water, water rights, and appurtenances, reversions and remainders belonging or in any way appertaining to the Premises;

(b)     All right, title and interest of the Grantor in or to any and all equipment, machinery, apparatus, appliances, fittings and fixtures located on Premises, and all renewals and replacements thereof and additions and accessions thereto (hereinafter collectively called the "**Service Equipment**"). Service Equipment shall be deemed to include, without limitation, all heating, lighting, pipes, pumps, tanks, motors, dynamos, boilers, fuel, conduits, switchboards, plumbing, ventilating, and communications apparatus, sprinkler systems and other fire prevention and fire extinguishing apparatus, air cooling and air conditioning apparatus, elevators, escalators, shades, blinds, awnings, screens, storm doors, and windows, wall cabinets, attached cabinets, partitions, ducts and compressors, pumps, filters, hoses, gas and electric equipment and fixtures, and all right, title and interest of the Grantor in and to any Service Equipment which may be subject to any security agreement, conditional bill of sale, or chattel mortgage superior to the rights of the Grantee under this Open-End Mortgage Deed, Assignment of Rents and Leases, Security Agreement and Fixture Filing (the "**Mortgage**");

(c)     Any and all unearned premiums, accrued, accruing or to accrue under any insurance policy or policies now or hereafter obtained by the Grantor and all proceeds payable by reason of the conversion, voluntary or involuntary, of the Premises, the Service Equipment and/or any other property or rights encumbered or conveyed hereby, or any part thereof, into cash or liquidated claims;

(d)     Any and all awards or payments, including interest thereon, and the right to receive the same, which may be made with respect to the Premises or the Service Equipment as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease in the value of the Premises or the Service Equipment, to the extent of all amounts which may be secured by this Mortgage at the date of receipt of any such award or payment by the Grantee, and of the reasonable attorneys' fees, costs and disbursements incurred by the Grantee in connection with the collection of such award or payment;

(e)     Any and all leases now existing or hereinafter entered into by the Grantor, whether or not recorded (the "**Leases**"), which relate to a part or all of the Premises; any extensions and renewals of the Leases; any guarantees of the lessee's obligations under the Leases; and all rents, income, profits, termination and cancellation fees due or to become due from the Premises under the Leases and under any other tenancy, rental or occupancy agreement now existing hereafter affecting the Premises, whether oral or written (the "**Rents**"); and

(f)     Any and all further estate, right, title, interest, property, claim and demand whatsoever, either in law or in equity, of the Grantor, in or to any of the above.

TO HAVE AND TO HOLD the above granted and bargained Mortgaged Property, with the privileges and appurtenances thereof, unto the said Grantee, its successors and assigns, forever, to its and their own proper use and behoof. And also, the said Grantor does for itself and for its [If Bemer is Grantor: heirs, executors, administrators], successors and assigns covenant with the said Grantee, its successors and assigns, that at and until the ensealing of these presents the Grantor is well seized of the Mortgaged Property as a good indefeasible estate in FEE SIMPLE; and has good right to bargain and sell the same in manner and form as above written.

AND FURTHERMORE, the Grantor does by these presents bind the Grantor and its [If Bemer is Grantor: heirs, executors, administrators], successors and assigns, forever, to warrant and defend the above granted and bargained Mortgaged Property to the said Grantee, its successors and assigns, against all claims and demand whatsoever, except as any encumbrances of title existing as of the date hereof.

THE CONDITION OF THIS DEED IS SUCH THAT:

WHEREAS, Bruce J. Bemer ("**Bemer**") is a defendant in the following five actions currently pending in the Connecticut Superior Court (the "**Court**"): (i) the action entitled Doe v. Bemer, No. FBT-cv-17-5032760-S (the "**60 Action**"), (ii) the action entitled Doe v. Bemer, No. FBT-cv-17-5032881-S (the "**81 Action**"), (iii) the action entitled Fleming v. Bemer, No. FBT-cv-17-6068382-S (the "**82 Action**"), (iv) the action entitled Walsh v. Bemer, No. FBT-cv-18-6070947-S (the "**47 Action**"), and (v) the action entitled Nesbitt v. Bemer, No. FBT-cv-18-

6172685-S (the "**85 Action**") (such actions are collectively referred to herein as the "**Consolidated Actions**"); and

WHEREAS, all plaintiffs in the Consolidated Actions (the "**Plaintiffs**") have asserted claims against Bemer; and

WHEREAS, all plaintiffs in the Consolidated Actions have applied for prejudgment remedies as to Bemer; and

WHEREAS, Plaintiffs and Bemer (together, the "**Parties**") have stipulated that Bemer shall provide the Plaintiffs security in the amount of Twenty-Five Million Dollars (the "**Aggregate Secured Amount**") to satisfy any Final Judgment (as defined below) entered against Bemer in the Consolidated Actions, and the Parties have filed a Joint Motion for Order of Stipulated Prejudgment Relief on **[DATE]**, 2018 (the "**Motion**"), which Motion was entered and granted as an order of the Court on **[DATE]** (the "**Order**"); and

WHEREAS, pursuant to the terms of the Order, Bemer is required to grant this Mortgage, and other mortgages (collectively, the "**Pledge Mortgages**"), on certain properties owned by Bemer, or owned by limited liability companies of which Bemer is the sole beneficial owner (a "**Controlled Mortgagor**"), to the Grantee, in its capacity as "Pledge Agent", under a certain Mortgage Pledge Agreement, of even date herewith (the "**Mortgage Pledge Agreement**"), between Bemer and Controlled Mortgagors, as "Pledgor" and Grantee, as "Pledge Agent" for the purpose of securing payment of any Final Judgement against Bemer in any of the Consolidated Actions provided the maximum obligation of Bemer to the Plaintiffs under the Consolidated Actions secured by this Mortgage, and the other Pledge Mortgages, shall not exceed, in the aggregate, the Aggregate Secured Amount;  a copy of which Mortgage Pledge Agreement is attached hereto as **Schedule A**; and

[FOR USE ONLY WHERE MORTGAGOR IS A LLC: WHEREAS, Bemer is the sole beneficial owner of Grantor and Grantor is a Controlled Mortgagor.]

WHEREAS, If not earlier vacated by the Court, by its terms the Order shall be vacated automatically as of the earliest of the following dates:

(i) The first date on which all claims against Bemer in the Consolidated Actions have been withdrawn;

(ii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment for Bemer has entered and (b) such judgment is not subject to further appeal (that is, such claims have been "**Finally Dismissed**");

(iii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment has entered against Bemer and (b) Bemer has satisfied such judgment liability (that is, such claims have been "**Fully Satisfied**"); or

95630660 7

(iv) The first date on which all claims against Bemer in the Consolidated Action have been (a) withdrawn, (b) Finally Dismissed, or (c) Fully Satisfied;

NOW, THEREFORE, upon the Order being vacated in accordance with the foregoing, this Mortgage shall become null and void and the Grantee shall promptly deliver to the Grantor a signed discharge of this Mortgage, in proper recordable form; otherwise to remain in full force and effect.

In consideration thereof, and in order more fully to protect the security of this Mortgage, the Grantor represents, warrants, covenants, and agrees as follows:

1.     Mortgage Grant. As required by the Order, this Mortgage is given to secure Bemer's obligation to pay a final judgment against Bemer in the Consolidated Actions no longer subject to any appeal (a "Final Judgment"), should any such Final Judgment enter, up to the Stipulated Mortgage Secured Amount (as defined in Section 2 below).

2.     Amount Secured by Mortgage.  The Grantor and Grantee (for himself and on behalf of any future Assignee (as defined in Section 12(a) below) to whom this Mortgage may be assigned to in accordance with the provisions referred to in Section 12(a) below), hereby stipulate that this Mortgage secures a portion of the Aggregate Secured Amount equal to [_____] Dollars (the "Stipulated Mortgage Secured Amount").

3.     Taxes Assessments, Other Charges and Future Laws.  The Grantor shall pay promptly, before the same shall become delinquent, all real estate taxes and assessments, sewer rents, water rates and other charges of any kind now or hereafter levied or assessed upon the Mortgaged Property or any part thereof, or upon the interest of the Grantee in the Mortgaged Property, and any other governmental or municipal charges and impositions for which lien rights exist.  Upon request of the Grantee, the Grantor shall exhibit to the Grantee receipts for the payment of real estate taxes promptly following payment thereof, and receipts for the payment of all other items specified in this Section prior to the date when the same shall become delinquent.

4.     Insurance.  The Grantor shall maintain in effect, and timely pay all premiums with respect to, all casualty and liability insurance policies maintained for the Mortgaged Property by Grantor as of the date of this Mortgage.

5.     Eminent Domain.  If the whole or any part of the Mortgaged Property shall be taken by eminent domain, or in the event of (i) any alteration of the grade of any street or highway, (ii) the reacquisition of the whole or any part of the Mortgaged Property pursuant to the terms of any redevelopment plan or agreement affecting the Mortgaged Property, or if any agreement shall be made between the Grantor and any entity vested with the power of eminent domain (each and all of the foregoing constituting a "Taking"), any and all awards and payments on account thereof (such awards and/or payments hereinafter referred to as the "Award" or "Payment") shall, first, be applied to pay for any necessary restorations to the Mortgaged Property and the excess, if any, shall be deposited with the Grantee to be held by Grantee, as Pledge Agent, in escrow, pursuant to the terms of the Mortgage Pledge Agreement. The Grantor shall give the Grantee prompt notice of the actual or threatened commencement of any of the

4

foregoing proceedings, and shall deliver to the Grantee copies of all papers served in connection with any such proceedings.

6.     Maintenance and Repair. The Grantor shall maintain the Mortgaged Property in good condition and repair, reasonable wear and tear and casualty excepted, and shall not commit or suffer any waste thereon.

7.     Alteration or Demolition. The Grantor agrees that no building or other property now or hereafter covered by the lien of this Mortgage shall be removed, demolished, or structurally altered without the prior written consent of the Grantee, which consent shall not be unreasonably withheld, conditioned or delayed, and which consent shall be deemed granted if Grantee shall fail to respond to a request for its consent within ten (10) days from delivery of such request, except that the Grantor may remove or dispose of, free from the lien of this Mortgage, any Service Equipment as from time to time may become worn out or obsolete, provided that contemporaneously with such removal, any such Service Equipment shall be replaced with other equipment of value and utility at least equal to that of the replaced Service Equipment.

8.     Restrictions on Sale and Use of Property, Etc. Except to the extent permitted by the Order, or an order by a court of competent jurisdiction, or the written agreement of all Parties, the Grantor shall at all times own the Mortgaged Property and will not sell, suffer a change in title or ownership of, or otherwise transfer or vest fee in anyone other than the Grantor, to all or any part of the Mortgaged Property while the Order remains outstanding. If a proposed disposition with respect to the entire Mortgaged Property is permitted in accordance with this section, and such disposition generates net proceeds paid to the Grantee, Grantee will release this Mortgage following Grantee's receipt of such net proceeds, which net proceeds shall be held by Grantee, as Pledge Agent, in escrow, pursuant to the terms of the Mortgage Pledge Agreement.

9.     Assignment of Rents and Leases. Grantor does hereby absolutely and unconditionally assign to Grantee all of Grantor's right, title and interest in all current and future Leases and all Rents due or to become due under the Leases and all proceeds from the sale, cancellation, surrender or other disposition of any of the Leases, it being intended by Grantor that this assignment constitutes a present, absolute assignment and not an assignment for additional security only. Such assignment to Grantee shall not be construed to bind Grantee to the performance of any of the covenants, conditions or provisions contained in any such Lease or otherwise to impose any obligation upon Grantee. Nevertheless, subject to the terms of this **Section 9,** Grantee grants to Grantor a revocable license to operate and manage the Mortgaged Property and to collect the Rents and otherwise enforce the Grantor's interest in the Leases and Rents. Upon entry of a court order directing assignment of this Mortgage in accordance with the Mortgage Pledge Agreement, the license granted to Grantor herein may be revoked and Grantee may enforce the assignment of rents and Grantee shall immediately be entitled to possession of all Rents, whether or not Grantee enters upon or takes control of the Mortgaged Property. Any Rents collected after the revocation of the license herein granted shall be applied by Grantee, in accordance with the Mortgage Pledge Agreement.

10.     Waiver of Liens. The Grantor shall keep and maintain the Mortgaged Property free from the claim of all persons supplying labor or materials in connection with the

5

construction or repair of any building on the Premises, notwithstanding by whom such labor or materials may have been contracted. If any mechanic's lien is filed against the Mortgaged Property, the Grantor shall cause the same to be canceled and discharged of record (by bonding or otherwise) within ninety (90) days after the date of filing thereof.

11.     Security Agreement and Financing Statement. This Mortgage shall constitute a Security Agreement within the meaning of the Uniform Commercial Code as enacted and adopted in the State of Connecticut (the "State"), as amended from time to time (the "Code") with respect to all portions of the Service Equipment which are or are to become a "fixture" within the meaning of the Code. Accordingly, in addition to any other rights and remedies availed to the Grantee hereunder, the Grantee shall have all the rights of a "secured party" under the Code, as amended from time to time. THIS MORTGAGE IS AND SHALL BE EFFECTIVE AS A FINANCING STATEMENT FILED AS A FIXTURE FILING WITH RESPECT TO ALL PORTIONS OF THE SERVICE EQUIPMENT WHICH ARE OR ARE TO BECOME FIXTURES AND IS TO BE FILED FOR RECORD IN THE REAL ESTATE RECORDS OF THE OFFICE OF TOWN CLERK OF THE TOWN OR CITY IN WHICH THE MORTGAGED PROPERTY IS LOCATED. THE MAILING ADDRESSES OF THE GRANTOR AND THE GRANTEE FROM WHICH INFORMATION CONCERNING THE SECURITY INTEREST MAY BE OBTAINED ARE SET FORTH ON PAGE ONE HEREOF. PHOTOGRAPHIC OR OTHER REPRODUCTION OF THIS MORTGAGE OR ANY FINANCING STATEMENT RELATING TO THIS MORTGAGE SHALL BE SUFFICIENT AS A FINANCING STATEMENT.

12.     Disposition of this Mortgage.

(a)     If so directed in accordance with the Order, or a final unappealable order by a court of competent jurisdiction, or the written agreement of all Parties, Grantee shall assign this Mortgage to one or more Plaintiffs (an "Assignee"), and such assignee may foreclose this Mortgage in accordance with applicable legal process and shall be accorded all of the rights and remedies set forth in Section 13 below.

(b)     In the event all claims against Bemer in the Consolidated Actions have been either (i) withdrawn, (ii) dismissed without further possibility of appeal, or (iii) reduced to judgment against Bemer and satisfied by Bemer (each such claim under (i), (ii), and (iii)), the Grantee shall execute and deliver to Bemer a release of this Mortgage, in recordable form, sufficient to terminate any and all interests of Grantee and Plaintiffs in the Mortgaged Property.

13.     Remedies Generally. In the event this Mortgage shall be assigned to an Assignee pursuant to the Order, or by the written agreement of all Parties, then such Assignee shall have all rights and remedies accorded a mortgagee legally entitled to foreclose mortgaged property. Additionally, in consideration for the Order, in the event such Assignee shall institute a foreclosure action against the Mortgaged Property, Grantor hereby agrees that it waives [IF BEMER IS NOT THE GRANTOR: on behalf of itself and Bemer] to the fullest extent permitted by law and equity:

(i)     any defense to the foreclosure or enforcement of this Mortgage for any reason whatsoever, including, but not limited to, any defense based upon (A) inadequate

6

consideration; (B) duress, (C) undue influence, (D) Grantor or Bemer having lacked the requisite legal capacity to enter into this Mortgage or the Mortgage Pledge Agreement; (E) the grounds this Mortgage, or the Mortgage Pledge Agreement, was not duly authorized, validly executed and delivered by Grantor or Bemer; and (F) the grounds this Mortgage, or the Mortgage Pledge Agreement, is not otherwise legally enforceable against Grantor or Bemer;

(ii)     any objection to Assignee's motion for strict foreclosure of this Mortgage, and in the event of the strict foreclosure of this Mortgage Grantor hereby waives any right to require an appraisal of the Mortgaged Property so long as the then-current value of the Mortgaged Property is not substantially in excess of the Stipulated Mortgage Secured Amount; and

(iii)     any defect in the legal description of the Mortgaged Property.

14.     <u>Jury Trial Waiver</u>.   GRANTEE (ON BEHALF OF ITSELF AND THE PLAINTIFFS) AND GRANTOR EACH WAIVE TRIAL BY JURY IN ANY ACTION OR PROCEEDING ARISING OUT OF, IN CONNECTION WITH OR IN ANY WAY PERTAINING TO THIS MORTGAGE OR THE MORTGAGE PLEDGE AGREEMENT. THIS WAIVER IS KNOWINGLY, WILLINGLY AND VOLUNTARILY MADE BY GRANTEE (ON BEHALF OF ITSELF AND THE PLAINTIFFS) AND GRANTOR, AND THEY HEREBY REPRESENT THAT NO REPRESENTATIONS OF FACT OR OPINION HAVE BEEN MADE BY ANY INDIVIDUAL TO INDUCE THIS WAIVER OF TRIAL BY JURY OR TO IN ANY WAY MODIFY OR NULLIFY ITS EFFECT. GRANTEE (ON BEHALF OF ITSELF AND THE PLAINTIFFS) AND GRANTOR FURTHER REPRESENT AND WARRANT THAT IT HAS BEEN REPRESENTED IN THE EXECUTION OF THIS MORTGAGE AND THE MORTGAGE PLEDGE AGREEMENT AND IN THE MAKING OF THIS WAIVER BY INDEPENDENT LEGAL COUNSEL, OR HAS HAD THE OPPORTUNITY TO BE REPRESENTED BY INDEPENDENT LEGAL COUNSEL SELECTED OF ITS OWN FREE WILL, AND THAT IT HAS HAD THE OPPORTUNITY TO DISCUSS THIS WAIVER WITH COUNSEL.

15.     <u>Certain Waivers, Consents and Agreements</u>.

(a)     The waivers set forth in Section 13(i),(ii) and (iii), Section 14 and Section 15(d) are knowingly, willingly and voluntarily made by Grantor [IF BEMER IS NOT THE GRANTOR: on behalf of itself and Bemer] and Grantor [IF BEMER IS NOT THE GRANTOR: on behalf of itself and Bemer] hereby represents that no representation of fact or opinion has been made by any individual to induce the foregoing waivers or to in any way modify of nullify their effect. Grantor [IF BEMER IS NOT THE GRANTOR: on behalf of itself and Bemer] further represents and warrants that it has been represented in the execution of this Mortgage and the Mortgage Pledge Agreement and in the making of these waivers by independent legal counsel, or has had the opportunity to be represented by independent legal counsel selected of its own free will, and that it has had the opportunity to discuss the foregoing waivers with counsel.

(b)  Delay Not A Bar. No delay or omission on the part of the Grantee, or an Assignee, in exercising any right hereunder, or under the Mortgage Pledge Agreement, shall operate as a waiver of any such right, nor shall any delay, omission or waiver on any one occasion be deemed to be a bar to or waiver of the same or of any other right on any future occasion.

(c)  Partial Invalidity. The invalidity or unenforceability of any provision hereof, or of the Mortgage Pledge Agreement, shall not impair or vitiate any other provision of this Mortgage or the Mortgage Pledge Agreements, all of which provisions shall be enforceable to the fullest extent now or hereafter permitted by law.

(d)  GRANTOR  FURTHER  HEREBY  IRREVOCABLY  AND UNCONDITIONALLY WAIVES, IN CONNECTION WITH ANY SUIT, ACTION OR PROCEEDING BROUGHT BY OR ON BEHALF OF GRANTEE, OR ANY PLAINTIFFS, WITH RESPECT TO THIS MORTGAGE OR THE MORTGAGE PLEDGE AGREEMENT, ANY AND EVERY RIGHT GRANTOR MAY HAVE TO (i) INJUNCTIVE RELIEF, (ii) INTERPOSE ANY COUNTERCLAIM THEREIN, OTHER THAN A COMPULSORY COUNTERCLAIM, AND (iii) HAVE THE SAME CONSOLIDATED WITH ANY OTHER OR SEPARATE SUIT, ACTION OR PROCEEDING.

16.  Miscellaneous Provisions.

(a)  Any demand by the Grantee upon the Grantor hereunder, or any notice required to be given hereunder shall be sufficient if in writing and delivered in person or sent by United States Certified Mail, postage prepaid, to the parties being given such notice at the following addresses:

Grantor:

Grantee:          Jacobs, Walker, Rice & Barry, LLC
                  146 Main Street
                  Manchester, CT 06042
                  Attention: Michael J. Rice, Esq.

:

Any party may change said address by giving the other parties hereto notice of such change of address.  Notice given as herein above provided shall be deemed given on the date of its deposit in the United States Mail and, unless sooner received, shall be deemed received by the party to whom it is addressed on the third (3rd) calendar day following the date on which said notice is deposited in the mail, or if a courier system is used, on the date of delivery of the notice.

8

95630680.7

(b)     Wherever used in this Mortgage, unless the context clearly indicates a contrary intent, or unless otherwise specifically provided herein, the word "Grantee" shall include "any subsequent holder or holders of this Mortgage"; the word "person" shall include "an individual, corporation, partnership, limited liability company, unincorporated association, or other entity". The terms "include" and "including" as used in this Mortgage shall be construed as if followed by the phrase "without limitation." Unless otherwise provided herein, plural or singular shall include each other, and pronouns in any gender shall be construed as masculine, feminine or neuter as the context requires.

(c)     If any term or provision of this Mortgage or the application thereof to any person or circumstance, shall to any extent be invalid or unenforceable, the remainder of this Mortgage, or the application of such term or provision to persons or circumstances other than those as to which it is invalid or unenforceable, shall not be affected thereby, and each term and provision of this Mortgage shall be valid and enforceable to the fullest extent permitted by law.

(d)     The captions or section headings used in this Mortgage are for convenience only and of no substance or significance, and shall not be used to interpret, modify or affect in any way the covenants and agreements herein contained.

(e)     This Mortgage shall be binding upon and inure to the benefit of the parties hereto and their respective [If Bemer is the Grantor: heirs, executors, administrators,] successors and assigns.

*[The Remainder of this Page Intentionally Left Blank]*

IN WITNESS WHEREOF, the Grantor has hereunto caused this instrument to be executed as of the _____ day of _____, 2108.

WITNESSES:

████████████████████████████

a Connecticut limited liability company

_____

Name:

By: _____
Name: Bruce Bemer
Title: Sole Member and Sole Manager

_____

Name:


**STATE OF CONNECTICUT**)
                          ) ss.:
**COUNTY OF HARTFORD**  )

The foregoing instrument was acknowledged before me, this          day of        .
2018, by Bruce Bemer, the sole Member and Manager of ████████████████
████, a Connecticut limited liability company, on behalf of said limited liability company, as his free act and deed and the free act and deed of said limited liability company.


_____,
Name:
Notary Public
My commission expires:


Signature Page to
Open-End Mortgage Deed, Assignment of Leases and Rents, Security Agreement and Fixture Filing

956306607

<u>SCHEDULE A</u>

[Legal Description]

SCHEDULE B

[Copy of Mortgage Pledge Agreement]

956306607

ACTIVE/79541.1/JTS/7189670v6

**Exhibit 1A**

## MORTGAGE PLEDGE AGREEMENT

**THIS MORTGAGE PLEDGE AGREEMENT** (this "Mortgage Pledge Agreement") is entered into on or effective as of _____ , 2018, by and between **BRUCE J. BEMER**, an individual residing in Glastonbury, Connecticut ("**Bemer**"), and Michael J. Rice , with an office in Manchester, Connecticut (the "**Pledge Agent**").

### PRELIMINARY STATEMENTS:

WHEREAS, Bruce J. Bemer is a defendant in the following five actions currently pending in the Connecticut Superior Court (the "Court"): (i) the action entitled <u>Doe v. Bemer</u>, No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled <u>Doe v. Bemer</u>, No. FBT-cv-17-5032881-S (the "-81 Action"), (iii) the action entitled <u>Fleming v. Bemer</u>, No. FBT-cv-17-6068382-S (the "-82 Action"), (iv) the action entitled <u>Walsh v. Bemer</u>, No. FBT-cv-18-6070947-S (the "-47 Action"), and (v) the action entitled <u>Nesbitt v. Bemer</u>, No. FBT-cv-18-6072685-S (the "-85 Action") (such actions are collectively referred to herein as the "<u>Consolidated Actions</u>"); and

WHEREAS, all plaintiffs in the Consolidated Actions (the "<u>Plaintiffs</u>") have asserted claims against Bemer; and

WHEREAS, all plaintiffs in the Consolidated Actions have applied for prejudgment remedies as to Bemer; and

WHEREAS, Bemer is the direct or beneficial owner of each of the following pieces of real property (all of such properties are referred to herein as the "<u>Collateral Properties</u>" and each is a "<u>Collateral Property</u>"):





and;

WHEREAS, Plaintiffs and Bemer (together, the "Parties") have agreed upon and stipulated that Bemer shall provide the Plaintiffs security in the amount of Twenty-Five Million Dollars (the "Secured Amount") to satisfy any Final Judgment (as defined below) entered against Bemer in the Consolidated Actions and the Parties have further agreed to file a Joint Motion for Order of Stipulated Prejudgment Remedy (the "Motion"), which Motion was entered and granted as an order of the Court on [DATE] (the "Order"); and

WHEREAS, such agreed upon and stipulated security includes all of the Collateral Properties; and

WHEREAS, pursuant to the terms of the Order, in the event, and only in the event (a) both (i) a final judgment is entered against Bemer in a Consolidated Action, and (ii) such final judgment against Bemer is no longer subject to any appeal (there is a "Final Judgment") or (b) for purposes of satisfying a claim compromised between Bemer and a Plaintiff, Pledge Agent shall, as directed by the Court, assign Mortgage(s) so designated by the Court to Plaintiffs so designated by the Court in order that such recipient Plaintiffs may foreclose such Mortgages;

WHEREAS, If not earlier vacated by the Court, by its terms the Order shall be vacated automatically as of the earliest of the following dates:

   (i) The first date on which all claims against Bemer in the Consolidated Actions have been withdrawn;

   (ii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment for Bemer has entered and (b) such judgment is not subject to further appeal (that is, such claims have been "Finally Dismissed");

   (iii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment has entered against Bemer and (b) Bemer has satisfied such judgment liability (that is, such claims have been "Fully Satisfied"); or

   (iv) The first date on which all claims against Bemer in the Consolidated Action have been (a) withdrawn, (b) Finally Dismissed, or (c) Fully Satisfied; and

WHEREAS, the Pledge Agent has agreed to serve in the capacity set forth herein;

**NOW, THEREFORE,** in consideration of the foregoing and in order to induce the plaintiffs in the Consolidated Actions to proceed with the Motion in lieu of seeking prejudgment attachments in the Consolidated Actions, Bemer and the Pledge Agent agree as follows:

2

1.    **Delivery of Collateral.** Simultaneous with the execution of this Mortgage Pledge Agreement, Bemer has granted, or caused the respective owners of the Collateral Properties to grant, to the Pledge Agent mortgages, substantially in the form of **Schedule A** attached hereto (the "Mortgages") on each of the Collateral Properties for the benefit of the respective Plaintiffs for the purpose of securing payment of any Final Judgment against Bemer in any of the Consolidated Actions provided the maximum obligation of Bemer to the Plaintiffs under the Consolidated Actions secured by the Mortgages shall not exceed, in the aggregate, the Secured Amount.   Together with the Mortgages, any cash proceeds from the Collateral Properties delivered to Pledge Agent to be held in escrow hereunder shall be referred to as "Collateral".

2.    **Rents and Income.**   Following revocation of the license granted Bemer in Section 9 of the Mortgages, any Rents, or other income, generated by the Collateral Property which may be collected or received by Pledge Agent shall be held by Pledge Agent, in escrow, pursuant to the terms of this Mortgage Pledge Agreement and be part of the Collateral.

3.    **Further Assurances.** Bemer agrees that from time to time he will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable that the Pledge Agent may request in order to perfect and protect the security interest granted or purported to be granted by any of the Mortgages.

4.    **The Pledge Agent's Duties and Responsibilities.**

(a)    The Pledge Agent undertakes to perform only such duties as are specifically required by this Mortgage Pledge Agreement, the Order or the Court, and no implied covenants or obligations shall be read into this Mortgage Pledge Agreement against the Pledge Agent.  The Pledge Agent shall exercise such rights and powers vested in it pursuant to this Mortgage Pledge Agreement and shall use the same degree of care and skill as a prudent person would exercise or use under the circumstances in the conduct of his or her own affairs.  No provision of this Mortgage Pledge Agreement shall be construed to relieve the Pledge Agent from liability for its own gross negligence or for its own willful misconduct; provided, however, that (i) the Pledge Agent shall not be liable for any error of judgment made in good faith and (ii) the Pledge Agent shall not be liable with respect to any action taken or admitted to be taken by it in good faith in accordance with  any order of a court of competent jurisdiction.

(b)    Notwithstanding any other provision herein to the contrary, should any dispute arise with respect to the delivery or right of possession of any Collateral, the Pledge Agent is authorized to retain in the Pledge Agent's possession without liability to any person, all or any part of the Collateral until such dispute shall have been settled either by mutual consent of the Parties, by a court of competent jurisdiction or as provided in Section 5 of this Mortgage Pledge Agreement.  Alternatively, the Pledge Agent may deliver all or any part of the Collateral into a court of competent jurisdiction upon the institution of an action in the nature of interpleader.

(c)    Upon the reasonable request of any of the Parties or their respective counsel, the Pledge Agent shall certify the status of the Collateral to any such person.

(d)     In the event any part of the Collateral required to be held in escrow hereunder shall be cash, such amounts shall be held in the Pledge Agent's IOLTA account, and none of the Parties shall be entitled to any interest thereon.

(e)     Under no circumstances shall the Pledge Agent be required to initiate or defend any foreclosure action with respect to any Collateral Property.

5.     **Delivery of Collateral.**

(a)     The Pledge Agent shall hold any Collateral until (i) the entry of an order by a court of competent jurisdiction instructing the Pledge Agent to deliver the Collateral, or any part thereof, to one or more Plaintiffs, Bemer, or any other person or entity, (ii) the Pledge Agent receives written instructions from all of the Parties as to the disposition of the Collateral, or any part thereof, in which case the Pledge Agent shall act in accordance with such order or written instructions, or (iii) all claims against Bemer in the Consolidated Actions have been either (A) withdrawn, (B) dismissed without further possibility of appeal, or (C) reduced to judgment against Bemer and satisfied by Bemer, in which case (each such claim either A, B, or C) the Pledge Agent shall deliver the Collateral to Bemer.

(b)     To deliver a Mortgage to one or more Plaintiffs or any party other than Bemer under section 5(a), the Pledge Agent shall assign such Mortgage in order that such recipient(s) may foreclose such Mortgage in accordance with applicable legal proceedings.  To deliver a Mortgage to Bemer under section 5(a), the Pledge Agent shall execute a release of mortgage sufficient to terminate any and all interests of the Pledge Agent or Plaintiffs in the subject property.

6.     **Indemnity and Expenses.**

(a)     Bemer agrees to indemnify and hold harmless the Pledge Agent from and against any and all losses, liabilities, claims, costs, damages or expenses (including, without limitation, reasonable attorneys' fees and expenses) arising out of or in connection with this Mortgage Pledge Agreement, other than any loss, liability, claim, cost, damage or expense resulting from the Pledge Agent's gross negligence or willful misconduct as determined by a final, nonappealable judgment of a court of competent jurisdiction.

(b)     Bemer further agree to pay the Pledge Agent the amount of any and all reasonable expenses, including the reasonable fees and expenses of its counsel and of any other advisors or agents, that the Pledge Agent may incur in connection with the administration of this Mortgage Pledge Agreement or the custody, preservation or disposition of the Collateral; provided, however, that the Pledge Agent shall not receive a fee or other compensation for serving as Pledge Agent hereunder.

7.     **Amendments; Waivers; Etc.**  No amendment or waiver of any provision of this Mortgage Pledge Agreement shall be effective unless the same shall be in writing and signed by each of the Parties, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

8.    **Notices.**  All notices and other communications required or permitted hereunder shall be in writing and shall be delivered personally, by U.S. certified or registered mail, return receipt requested, or by a nationally recognized mail courier service, addressed as follows:

If to Bemer, to:

c/o Ryan P. Barry, Esq.
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040

If to the Pledge Agent, to:

Michael J. Rice, Esq.
Jacobs, Walker, Rice & Barry, LLC
146 Main Street,
Manchester, CT 06042

A copy of any notice or other communication delivered hereunder shall be provided by the Pledge Agent to the following counsel to each of the Plaintiffs, or any substitute counsel which gives written notice of such substitution to the Pledge Agent.

[Names and Addresses of Plaintiffs' counsel]

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P:  (203) 624-9500
F:  (203) 624-9100
E:  jfaxon@faxonlawgroup.com
[Plaintiffs – Edward Barron, Conservator of the E/O D.T.; Carol A. Collins Administratrix of the E/O Jonathan Conetta; Justin Lewis, Conservator of the Person and E/O of T.M.; Michael & Linda Marino, Co-Administrators of the E/O Samuel Marino; John Doe #1; John Doe #2; and John Doe #3]

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P:  (860) 827-0880
F:  (806) 827-9942
E:  kevin@kevinferrylaw.com
[Plaintiffs – John Doe, Adam Doe and Bob Doe]

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com
[Plaintiff – Michael Fleming]

Gerald S. Sack, Esq.
Gerald S. Sack Law Offices LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
T: 860-236-7225
E: gssack@sacklaw.com
[Plaintiff – Daniel Walsh, Conservator of the Person and E/O John Doe]
[Plaintiff – William Nesbitt]

9. **Governing Law.** This Mortgage Pledge Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut notwithstanding the fact that certain of the Collateral Properties are located in the Commonwealth of Massachusetts.

10. **Term**. This Mortgage Pledge Agreement shall terminate upon the earlier to occur of (a) the Order being vacated and the Mortgages being released by Pledge Agent, and (b) the assignment, by Pledge Agent, of the Mortgages to the Plaintiffs in accordance with an order of the Court.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have hereunto caused this instrument to be executed as of the _____ day of _____, 2018.

WITNESSES:                                    **BEMER:**

_____                       _____
Name:                                         Bruce J. Bemer

_____
Name:

WITNESSES:                                    **PLEDGE AGENT:**

_____                       _____
Name:                                         Michael J. Rice, Esq.

_____
Name:


**STATE OF CONNECTICUT)**
                              ) ss.:
**COUNTY OF HARTFORD   )**

The foregoing instrument was acknowledged before me, this _____ day of _____, 2018, by Bruce J. Bemer as his free act and deed.

                              _____,
                              Name:
                              Notary Public
                              My commission expires:

**STATE OF CONNECTICUT)**
                       **) ss.:**
**COUNTY OF HARTFORD   )**

The foregoing instrument was acknowledged before me, this _____ day of _____,
2018, by _____, Pledge Agent, as his/her free act and deed.

                                 _____,
                                 Name:
                                 Notary Public
                                 My commission expires:

**Exhibit 1B**

████████████████████████████

**(a limited liability company)**

## Statement of Consent of the Sole Member and Manager
## In Lieu of Meeting

**WHEREAS,** ████████████████████, a Connecticut limited liability company (the "Member and Manager") is the sole Member and Manager of ████████████ ████████████, a Connecticut limited liability company (the "Company"); and

**WHEREAS,** BRUCE J. BEMER ("Bemer") ████████████████████████ ██████; and

**WHEREAS,** Bemer is a defendant in the following five actions currently pending in the Connecticut Superior Court: (i) the action entitled Doe v. Bemer, No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled Doe v. Bemer, No. FBT-cv-17-5032881-S (the "-81 Action"), (iii) the action entitled Fleming v. Bemer, No. FBT-cv-17-6068382-S (the "-82 Action"), (iv) the action entitled Walsh v. Bemer, No. FBT-cv-18-6070947-S (the "-47 Action"), and (v) the action entitled Nesbitt v. Bemer, No. FBT-cv-18-6072685-S (the "-85 Action") (such actions are collectively referred to herein as the "Consolidated Actions"); and

**WHEREAS,** all plaintiffs in the Consolidated Actions (the "Plaintiffs") have asserted claims against Bemer; and

**WHEREAS,** all plaintiffs in the Consolidated Actions have applied for prejudgment remedies as to Bemer; and

**WHEREAS,** the Company is the owner of the parcel of real property located at ███████ ████████████████ (the "Collateral Property") and;

**WHEREAS,** Plaintiffs and Bemer (together, the "Parties") have agreed upon and stipulated to the amount and form of security to be provided for any judgments entered against Bemer in the Consolidated Actions and the Parties have further agreed to file a Joint Motion for Order of Stipulated Prejudgment Relief (the "Motion"); and

**WHEREAS,** such agreed upon and stipulated security includes the Collateral Property;

**NOW, THEREFORE,** the undersigned Member and Manager does hereby waive any and all requirements of the Articles of Organization of the Company or laws which otherwise might require a meeting of the Member and/or Manager of the Company to be called, convened or held for the disposition by vote of any of the matters herein set forth; and in lieu of any such meeting being so called, convened or held, the undersigned Member and Manager does hereby consent, agree and adopt the following resolutions, and the undersigned Member and Manager agrees that such resolutions shall have the same force and effect as if unanimously adopted at a meeting duly convened:

**BE IT RESOLVED**, the Company is authorized to grant, execute and deliver to Michael J. Rice (the "Pledge Agent") a Mortgage encumbering the Collateral Property in the amount set forth in the Motion; and be it further

**RESOLVED**, that the Manager hereby is and shall be authorized to execute any and all documents on behalf of the Company in order to effectuate the above resolution, the execution and delivery thereof by said Manager on behalf of the Company constituting conclusive evidence binding upon the Company of the approval of the terms thereof; and be it further

**RESOLVED**, that the Manager of the Company hereby is and shall be authorized, empowered and directed, for and on behalf of the Company, to take or cause to be taken all such further action and to execute and deliver or cause to be executed and delivered, and, if appropriate, file or record, or cause to be filed and recorded, any and all applications, agreements, contracts, undertakings, commitments, consents, certificates, reports, affidavits, statements, and other documents, instruments or papers, as he deems necessary, desirable or appropriate to enter into and consummate the transaction hereinbefore described, and otherwise to carry out and consummate the intent and purposes of the foregoing resolutions and each of them and the Company shall thereupon be bound thereby; and be it further

**RESOLVED**, that any and all other actions heretofore taken by the Company or the Manager of the Company to execute and deliver any of the agreements authorized by the foregoing resolutions, or to take any of the actions authorized by the foregoing resolutions are hereby approved, ratified and confirmed in all respects.

**IN WITNESS WHEREOF**, the undersigned Member and Manager has executed this Statement of Consent, intending to be legally bound, effective the ____ day of _____, 2018.

**MEMBER AND MANAGER:**

███████████████████

_____

By: Bruce J. Bemer, Manager

**Exhibit 2**

## SECURITY PLEDGE AGREEMENT

**THIS SECURITY PLEDGE AGREEMENT** (this "Security Pledge Agreement") is entered into on or effective as of _____, 2018, by and between **BRUCE J. BEMER**, an individual residing in Glastonbury, Connecticut ("**Bemer**"), and Michael J. Rice , with an office in Manchester, Connecticut (the "**Pledge Agent**").

### PRELIMINARY STATEMENTS:

WHEREAS, Bruce J. Bemer is a defendant in the following five actions currently pending in the Connecticut Superior Court: (i) the action entitled <u>Doe v. Bemer</u>, No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled <u>Doe v. Bemer</u>, No. FBT-cv-17-5032881-S (the "-81 Action"), (iii) the action entitled <u>Fleming v. Bemer</u>, No. FBT-cv-17-6068382-S (the "-82 Action"), (iv) the action entitled <u>Walsh v. Bemer</u>, No. FBT-cv-18-6070947-S (the "-47 Action"), and (v) the action entitled <u>Nesbitt v. Bemer</u>, No. FBT-cv-18-6072685-S (the "-85 Action") (such actions are collectively referred to herein as the "Consolidated Actions"); and

WHEREAS, all plaintiffs in the Consolidated Actions (the "Plaintiffs") have asserted claims against Bemer; and

WHEREAS, all plaintiffs in the Consolidated Actions have applied for prejudgment remedies as to Bemer; and

WHEREAS, Bemer is the sole stockholder of each of the following Connecticut corporations (the "Bemer-Owned Corporations") and owns the number of shares of capital stock of each respective corporation as follows (all of such shares are referred to herein as the "Collateral Shares"):

| Corporation | Number of Shares |
|---|---|
| ████████████████ | |

and;

WHEREAS, Bemer maintains a deposit account _____ at _____ Bank (the "Account"); and

WHEREAS, Plaintiffs and Bemer (together, the "<u>Parties</u>") have agreed upon and stipulated that Bemer shall provide the Plaintiffs security in the amount of Twenty-Five Million Dollars (the "<u>Secured Amount</u>") to satisfy any Final Judgment (as defined below) entered against Bemer in the Consolidated Actions and the Parties have further agreed to file a Joint Motion for

Order of Stipulated Prejudgment Relief (the "Motion"), which Motion was entered and granted as an order of the Court on **[DATE]** (the "Order"); and

WHEREAS, such agreed upon and stipulated security includes all of the Collateral (as defined below) and a security interest in the Account and all funds held therein; and

WHEREAS, If not earlier vacated by the Court, by its terms the Order shall be vacated automatically as of the earliest of the following dates:

(i) The first date on which all claims against Bemer in the Consolidated Actions have been withdrawn;

(ii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment for Bemer has entered and (b) such judgment is not subject to further appeal (that is, such claims have been "Finally Dismissed");

(iii) The first date on which, as to all claims against Bemer in the Consolidated Actions, both (a) final judgment has entered against Bemer and (b) Bemer has satisfied such judgment liability (that is, such claims have been "Fully Satisfied"); or

(iv) The first date on which all claims against Bemer in the Consolidated Action have been (a) withdrawn, (b) Finally Dismissed, or (c) Fully Satisfied; and

WHEREAS, the Pledge Agent has agreed to serve in the capacity set forth herein;

**NOW, THEREFORE,** in consideration of the foregoing and in order to induce the plaintiffs in the Consolidated Actions to proceed with the Motion in lieu of seeking prejudgment attachments in the Consolidated Actions, Bemer and the Pledge Agent agree as follows:

**Section 1.** **Grant of Security.** Bemer hereby pledges to each of the Plaintiffs for their respective benefit, and hereby grants to each Plaintiff for his benefit a security interest in the following (the "Collateral"):

(a)    all Collateral Shares owned by him and the certificates representing the Collateral Shares, and all dividends, and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of the Collateral Shares;

(b)    all additional shares of capital stock ("Additional Shares") of the Bemer-Owned Corporations from time to time acquired by Bemer in any manner, and the certificates representing such additional shares, and all dividends, cash, instruments and other property or proceeds from time to time received, receivable or otherwise distributed in respect of or in exchange for any or all of such Additional Shares; and

(c)    the Account and all funds held therein.

2

**Section 2.**     **Security for Obligations.**  This Security Pledge Agreement secures the payment of all judgments that may be entered against Bemer in the Consolidated Actions or any of them, including any interest which shall accrue on such judgments (all such obligations being the "Secured Obligations").

**Section 3.**     **Delivery of Collateral.**  Simultaneous with the execution of this Security Pledge Agreement, Bemer has delivered the certificates representing or evidencing the Collateral Shares to the Pledge Agent to be held by the Pledge Agent on behalf of the Plaintiffs, subject to the terms and conditions of this Security Pledge Agreement, accompanied by undated stock transfer powers executed in blank, all in form and substance satisfactory to the Pledge Agent.

**Section 4.**     **Execution and Delivery of Control Agreement.**  Simultaneous with the execution of this Security Pledge Agreement, Bemer has delivered a Deposit Account Control Agreement (the "Control Agreement"), in form and substance satisfactory to the Pledge Agent, executed by the parties thereto.

**Section 5.**     **Further Assurances.**  Bemer agrees that from time to time he will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable that the Pledge Agent may request in order to perfect and protect the pledge and security interest granted or purported to be granted hereby or to enable a Plaintiff to exercise and enforce his/her rights and remedies hereunder with respect to any Collateral.  Without limiting the generality of the foregoing, Bemer will authorize each Plaintiff and the Pledge Agent to file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable in order to perfect and preserve the pledge and security interest granted or purported to be granted hereby.

**Section 6.**     **Voting Rights; Dividends; Business Operations; Etc.**

(a)     Unless and until the issuance of a contrary order by a court of competent jurisdiction, Bemer shall be entitled to exercise any and all voting and other consensual rights pertaining to the Collateral and any part thereof for any purpose not inconsistent with the terms of this Security Pledge Agreement.  However, all dividends and distributions paid or payable in respect of any Collateral, whether in cash, property, instruments or any other manner, and whether paid in the ordinary course or in connection with a partial or total liquidation or dissolution or for any other reason, shall be delivered and paid to the Pledge Agent to hold as Collateral for the benefit of the Plaintiffs.  Simultaneous with the execution of this Security Pledge Agreement, Bemer has delivered to the Pledge Agent the acknowledgement and agreement of each of the Bemer-Owned Corporations to the foregoing in the form attached to this Pledge Agreement as Exhibit A.

(b)     The Parties agree and acknowledge that until the issuance of an order of a court of competent jurisdiction which provides to the contrary, Bemer shall be entitled to continue to manage and direct the affairs of the Bemer-Owned Corporations in the ordinary course of business without interruption by the Plaintiffs or the Pledge Agent.  Neither the Pledge Agent nor the Plaintiffs shall have, by virtue of this Security Pledge Agreement, (i) any rights with respect to a Bemer-Owned Corporation which would customarily be the rights of a

3

shareholder (e.g. rights of inspection of books and records), (ii) any right to participate in the management of any Bemer-Owned Corporation, or (iii) any right other than as granted in a final, non-appealable order of a court of competent jurisdiction.

(c)     Notwithstanding the foregoing or anything set forth in this Security Pledge Agreement to the contrary, if any Bemer-Owned Corporation is an S-Corporation for federal income tax purposes and pays a dividend or makes a distribution to the Pledge Agent, the Pledge Agent shall pay to Bemer the amount due to pay the federal or any state or local income tax obligation of Bemer, as certified to the Pledge Agent by a certified public accountant acceptable to the Pledge Agent.

**Section 7.     Additional Shares.**  Bemer hereby agrees for so long as any Collateral is held by the Pledge Agent that he shall cause each Bemer-Owned Corporation (i) not to issue any stock or other securities except to Bemer, and (ii) to deliver or otherwise transfer any such stock or securities to the Pledge Agent immediately following the issuance thereof for the benefit of the Plaintiffs hereunder, accompanied by undated stock transfer powers executed in blank, in form and substance satisfactory to the Pledge Agent, and such stock or securities shall be held and disposed of in accordance with the terms of this Security Pledge Agreement.

**Section 8.     Pledge Agent Appointed Attorney-in-Fact.**  Bemer hereby irrevocably appoints the Pledge Agent as Bemer's attorney-in-fact, with full authority in the place and stead of Bemer and in the name of Bemer, from time to time in the Pledge Agent's discretion, to take any action and to execute any instrument that the Pledge Agent may deem necessary or advisable to accomplish the purposes of this Pledge Agreement, without regard to the adequacy of the security for the Secured Obligations.

**Section 9.     The Pledge Agent's Duties and Responsibilities.**

(a)     The Pledge Agent undertakes to perform only such duties as are specifically required by this Security Pledge Agreement, and no implied covenants or obligations shall be read into this Security Pledge Agreement against the Pledge Agent. The Pledge Agent shall exercise such rights and powers vested in it pursuant to this Security Pledge Agreement and shall use the same degree of care and skill as a prudent man would exercise or use under the circumstances in the conduct of his own affairs. No provision of this Security Pledge Agreement shall be construed to relieve the Pledge Agent from liability for its own gross negligence or for its own willful misconduct; provided, however, that (i) the Pledge Agent shall not be liable for any error of judgment made in good faith and (ii) the Pledge Agent shall not be liable with respect to any action taken or admitted to be taken by it in good faith in accordance with the written directions of Bemer or Bemer's counsel or in accordance with any order of a court of competent jurisdiction.

(b)     Notwithstanding any other provision herein to the contrary, should any dispute arise with respect to the delivery or right of possession of any Collateral, the Pledge Agent is authorized to retain in the Pledge Agent's possession without liability to any person, all or any part of the Collateral until such dispute shall have been settled either by mutual consent of the Parties, by a court of competent jurisdiction or as provided in Section 10 of this Security

4

Pledge Agreement. Alternatively, the Pledge Agent may deliver all or any part of the Collateral into a court of competent jurisdiction upon the institution of an action in the nature of interpleader.

(c)     Upon the reasonable request of any of the Parties or their respective counsel, the Pledge Agent shall certify the status of the Collateral to any such person.

(d)     In the event any part of the Collateral shall be cash under section 1(a) or 1(b), such amounts shall be held in the Pledge Agent's IOLTA account, and none of the Parties shall be entitled to any interest thereon.

**Section 10.     Delivery of Collateral.** The Pledge Agent shall hold the Collateral and all related stock transfer powers until (i) the entry of an order by a court of competent jurisdiction instructing the Pledge Agent to deliver the Collateral, or any part thereof, to one or more Plaintiffs, Bemer, or any other person or entity, (ii) the Pledge Agent receives written instructions from all of the Parties as to the disposition of the Collateral, or any part thereof, in which case the Pledge Agent shall act in accordance with such order or written instructions, or (iii) all claims against Bemer in the Consolidated Actions have been either (A) withdrawn, (B) dismissed without further possibility of appeal, or (C) reduced to judgment against Bemer and satisfied by Bemer, in which case (each such claim either A, B, or C) the Pledge Agent shall deliver the Collateral to Bemer.   At any such time, the Pledge Agent shall also terminate the Control Agreement.

**Section 11.     Indemnity and Expenses.**

(a)     Bemer agrees to indemnify and hold harmless the Pledge Agent from and against any and all losses, liabilities, claims, costs, damages or expenses (including, without limitation, reasonable attorneys' fees and expenses) arising out of or in connection with this Security Pledge Agreement, other than any loss, liability, claim, cost, damage or expense resulting from the Pledge Agent's gross negligence or willful misconduct as determined by a final, nonappealable judgment of a court of competent jurisdiction.

(b)     Bemer further agrees to pay the Pledge Agent the amount of any and all reasonable expenses, including the reasonable fees and expenses of its counsel and of any other advisors or agents, that the Pledge Agent may incur in connection with the administration of this Security Pledge Agreement or the custody, preservation or disposition of the Collateral; provided, however, that the Pledge Agent shall not receive a fee or other compensation for serving as Pledge Agent hereunder.

**Section 12.     Amendments; Waivers; Etc.** No amendment or waiver of any provision of this Pledge Agreement shall be effective unless the same shall be in writing and signed by each of the Parties, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**Section 13.     Notices.** All notices and other communications required or permitted hereunder shall be in writing and shall be delivered personally, by U.S. certified or registered

5

mail, return receipt requested, or by a nationally recognized mail courier service, addressed as follows:

If to Bemer, to:

c/o Ryan P. Barry, Esq.
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040


If to the Pledge Agent, to:

Michael J. Rice, Esq.
Jacobs, Walker, Rice & Barry, LLC
146 Main Street,
Manchester, CT 06042


A copy of any notice or other communication delivered hereunder shall be provided by the Pledge Agent to the following counsel to each of the Plaintiffs, or any substitute counsel which gives written notice of such substitution to the Pledge Agent.


[Names and Addresses of Plaintiffs' counsel]


Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P:  (203) 624-9500
F:  (203) 624-9100
E:  jfaxon@faxonlawgroup.com
[Plaintiffs – Edward Barron, Conservator of the E/O D.T.; Carol A. Collins Administratrix of the E/O Jonathan Conetta; Justin Lewis, Conservator of the Person and E/O of T.M.; Michael & Linda Marino, Co-Administrators of the E/O Samuel Marino; John Doe #1; John Doe #2; and John Doe #3]

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P:  (860) 827-0880
F:  (806) 827-9942
E:  kevin@kevinferrylaw.com
[Plaintiffs – John Doe, Adam Doe and Bob Doe]

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P:  (203) 661-4200
F:  (203) 661-3666
E:  efile@greenwichlegal.com
[Plaintiff – Michael Fleming]

Gerald S. Sack, Esq.
Gerald S. Sack Law Offices LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
T: 860-236-7225
E: gssack@sacklaw.com
[Plaintiff – Daniel Walsh, Conservator of the Person and E/O John Doe]
[Plaintiff – William Nesbitt]

**Section 14.**   **Continuing Security Interest.**   This Security Pledge Agreement shall (i) create a continuing security interest in the Collateral and shall remain in full force and effect until the delivery of all of the Collateral pursuant to Section 10 of this Security Pledge Agreement, and (ii) be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, personal representatives and successors.

**Section 15.**   **Governing Law.**   This Security Pledge Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

7

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Pledge Agreement as of the date first above written.

**BEMER:**

_____
Bruce J. Bemer

**<u>PLEDGE AGENT</u>:**

_____
Michael J. Rice

8

**Exhibit A**

## ACKNOWLEDGEMENT AND AGREEMENT
## TO
## SECURITY PLEDGE AGREEMENT RESTRICTIONS

WHEREAS, attached hereto is a copy of the Security Pledge Agreement (the "Security Pledge Agreement") entered into this date by and between Bruce J. Bemer and Michael J. Rice, as the Pledge Agent (capitalized terms used herein shall have the meaning given to such terms in the Security Pledge Agreement); and

WHEREAS, all of the stock of Bemer in each of the undersigned corporations is pledged to the Pledge Agent pursuant to the Security Pledge Agreement to secure payment of the Secured Obligations; and

WHEREAS, each of the undersigned corporations is required under the Security Pledge Agreement to take certain actions and refrain from certain actions, as provided therein;

NOW, THEREFORE, in consideration of the foregoing and to induce the plaintiffs in the Consolidated Actions to proceed with the Joint Motion for Order of Stipulated Prejudgment Relief in lieu of seeking prejudgment attachments against Bemer in the Consolidated Actions, each of the undersigned corporations acknowledges and agrees to each and every provision of the Pledge Agreement that imposes an obligation on each such corporation.

By:_____
      Bruce J. Bemer, President

By:_____
      Bruce J. Bemer, President

**Exhibit 3**

### COLLATERAL ASSIGNMENT OF PROMISSORY NOTE
### TO
### PLEDGE AGENT

**THIS   COLLATERAL   ASSIGNMENT   AGREEMENT** (this "Assignment Agreement") is entered into on or effective as of                    , 2018, by and between **BRUCE J. BEMER**, an individual residing in Glastonbury, Connecticut ("**Bemer**"), and Michael J. Rice, with an office in Manchester, Connecticut (the "**Pledge Agent**").

### PRELIMINARY STATEMENTS:

WHEREAS, Bruce J. Bemer ("Bemer") is a defendant in the following five actions currently pending in the Connecticut Superior Court: (i) the action entitled Doe v. Bemer, No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled Doe v. Bemer, No. FBT-cv-17-5032881-S (the "-81 Action"), (iii) the action entitled Fleming v. Bemer, No. FBT-cv-17-6068382-S (the "-82 Action"), (iv) the action entitled Walsh v. Bemer, No. FBT-cv-18-6070947-S (the "-47 Action"), and (v) the action entitled Nesbitt v. Bemer, No. FBT-cv-18-6072685-S (the "-85 Action") (such actions are collectively referred to herein as the "Consolidated Actions"); and

WHEREAS, all plaintiffs in the Consolidated Actions (the "Plaintiffs") have asserted claims against Bemer; and

WHEREAS, all plaintiffs in the Consolidated Actions have applied for prejudgment remedies as to Bemer; and

WHEREAS, Plaintiffs and Bemer (together, the "Parties") have agreed upon and stipulated to the amount and form of security to be provided for any judgments entered against Bemer in the Consolidated Actions and the Parties have further agreed to file a Joint Motion for Order of Stipulated Prejudgment Relief (the "Motion"); and

WHEREAS, such agreed upon and stipulated security includes the loan receivables evidenced by that certain Promissory Note of ███████████████████████ dated in the original principal amount of ██████ (the "Assigned Note"), a copy of which is attached hereto as Exhibit A; and

WHEREAS, the Pledge Agent has agreed to serve in the capacity set forth herein;

**NOW, THEREFORE,** in consideration of the foregoing and in order to induce the plaintiffs in the Consolidated Actions to proceed with the Motion in lieu of seeking prejudgment attachments in the Consolidated Actions, Bemer and the Pledge Agent agree as follows:

**Section 1.**     **Representations of Bemer.** Bemer represents and warrants to the Pledge Agent and the Plaintiffs that:

(a)     the amount due as of January 1, 2018 under the Assigned Note is $_____, of which $_____ is principal due and $_____ is accrued and unpaid interest, and that no amounts of principal or interest have been paid since January 1, 2018 with respect to such promissory note;

(b)     Bemer has full right, title and interest in and to the Assigned Note, free and clear of any liens, charges or other encumbrances; and

(c)     Bemer has not previously transferred, conveyed or granted any interest in or to the Assigned Note to any party and that Bemer shall not assign, transfer, sell, convey or encumber the Assigned Note to any other party at any time while this Assignment Agreement remains in effect.

**Section 2.     Assignment and Security Interest.** Bemer hereby grants, bargains, sells, assigns, transfers and sets over to the Pledge Agent, on behalf of the Plaintiffs, and their heirs, executors, administrators and personal representatives, and grants to such parties a security interest in all of Bemer's right, title and interest in and to the Assigned Note. Bemer acknowledges that all payments due and to become due under the Assigned Note shall be paid to the Pledge Agent as provided in the Assigned Note.

**Section 3.     Security for Obligations.** This Assignment Agreement is entered into to secure the payment of all judgments that may be entered against Bemer in the Consolidated Actions, or any of them, including any interest which shall accrue on such judgments (all such obligations being the "Secured Obligations").

**Section 4.     Delivery of the Assigned Note and Acknowledgment by Maker.** Simultaneous with the execution of this Assignment Agreement, Bemer has delivered to the Pledge Agent (a) an original executed Assigned Note and (b) the written acknowledgement by New London-Waterford Speedbowl, Inc. of this Assignment Agreement and its obligation to make all further payments under the Assigned Note to the Pledge Agent.

**Section 5.     Further Assurances.** Bemer agrees that from time to time he will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or desirable that the Pledge Agent or any of the Plaintiffs may request in order to perfect and protect the pledge and security interest granted or purported to be granted hereby or to enable a Plaintiff to exercise and enforce their rights and remedies hereunder with respect to the Assigned Note. Without limiting the generality of the foregoing, Bemer will authorize each Plaintiff and the Pledge Agent to file such financing or continuation statements, or amendments thereto, and such other instruments or notices, as may be necessary or desirable in order to perfect and preserve the pledge and security interest granted or purported to be granted hereby.

**Section 6.     Pledge Agent Appointed Attorney-in-Fact.** Bemer hereby irrevocably appoints the Pledge Agent as Bemer's attorney-in-fact, with full authority in the place and stead of Bemer and in the name of Bemer, from time to time in the Pledge Agent's discretion, to take any action that the Pledge Agent may deem necessary or advisable to accomplish the purposes of

this Assignment Agreement. The Pledge Agent therefore may, at its option, without notice to Bemer, exercise any rights and remedies of Bemer under the Assigned Note, without regard to the adequacy of the security for the Secured Obligations. Bemer grants the Pledge Agent full power and authority to do and perform each and every act whatsoever requisite to be done with respect to the Assigned Note, as fully and to all intents and purposes, as Bemer could do if personally present, hereby ratifying and confirming all that the Pledge Agent shall lawfully do or cause to be done by virtue hereof.

**Section 7.    The Pledge Agent's Duties and Responsibilities**.

(a)    The Pledge Agent shall receive and hold any payments made under the Assigned Note. Such amounts shall be held in the Pledge Agent's IOLTA account, and none of the Parties shall be entitled to any interest thereon. The Assigned Note and any amounts received by the Pledge Agent on account thereof are referred to herein as the "Collateral."

(b)    The Pledge Agent undertakes to perform only such duties as are specifically required by this Assignment Agreement, and no implied covenants or obligations shall be read into this Assignment Agreement against the Pledge Agent. The Pledge Agent shall exercise such rights and powers vested in it pursuant to this Assignment Agreement and shall use the same degree of care and skill as a prudent man would exercise or use under the circumstances in the conduct of his own affairs. No provision of this Assignment Agreement shall be construed to relieve the Pledge Agent from liability for its own gross negligence or for its own willful misconduct; provided, however, that (i) the Pledge Agent shall not be liable for any error of judgment made in good faith and (ii) the Pledge Agent shall not be liable with respect to any action taken or admitted to be taken by it in good faith in accordance with the written directions of Bemer or Bemer's counsel, or in accordance with any order of a court of competent jurisdiction.

(c)    Notwithstanding any other provision herein to the contrary, should any dispute arise with respect to the delivery or right of possession of any Collateral, the Pledge Agent is authorized to retain in the Pledge Agent's possession without liability to any person, all or any part of the Collateral until such dispute shall have been settled either by mutual consent of the Parties, by a court of competent jurisdiction or as provided in Section 8 of this Assignment Agreement. Alternatively, the Pledge Agent may deliver all or any part of the Collateral into a court of competent jurisdiction upon the institution of an action in the nature of interpleader.

(d)    Upon the request of any of the Parties, or their respective counsel, the Pledge Agent shall certify the status of the Collateral to any such person.

**Section 8.    Delivery of Collateral.** The Pledge Agent shall hold the Collateral until (i) the entry of an order by a court of competent jurisdiction instructing the Pledge Agent to deliver the Collateral, or any part thereof, to one or more Plaintiffs, Bemer, or any other person or entity, (ii) the Pledge Agent receives written instructions from all of the Parties as to the disposition of the Collateral, or any part thereof, in which case the Pledge Agent shall act in accordance with such order or written instructions, or (iii) all claims against Bemer in the Consolidated Actions have been either (A) withdrawn, (B) dismissed without further possibility

3

of appeal, or (C) reduced to judgment against Bemer and satisfied by Bemer, in which case (each such claim either A, B, or C) the Pledge Agent shall deliver the Collateral to Bemer.

**Section 9.**   **Indemnity and Expenses.**

(a)   Bemer agrees to indemnify and hold harmless the Pledge Agent from and against any and all losses, liabilities, claims, costs, damages or expenses (including, without limitation, reasonable attorneys' fees and expenses) arising out of or in connection with this Assignment Agreement, other than any loss, liability, claim, cost, damage or expense resulting from the Pledge Agent's gross negligence or willful misconduct as determined by a final, nonappealable judgment of a court of competent jurisdiction.

(b)   Bemer further agrees to pay the Pledge Agent the amount of any and all reasonable expenses, including the reasonable fees and expenses of its counsel and of any other advisors or agents, that the Pledge Agent may incur in connection with (i) the administration of this Assignment Agreement or (ii) the custody, preservation or disposition of the Collateral; provided, however, that the Pledge Agent shall not receive a fee or other compensation for serving as Pledge Agent hereunder.

**Section 10.**   **Amendments; Waivers; Etc.**   No amendment or waiver of any provision of this Assignment Agreement shall be effective unless the same shall be in writing and signed by each of the Parties, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

**Section 11.**   **Notices.**   All notices and other communications required or permitted hereunder shall be in writing and shall be delivered personally, by U.S. certified or registered mail, return receipt requested, or by a nationally recognized mail courier service, addressed as follows:

If to Bemer, to:

c/o Ryan P. Barry, Esq.
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040


If to the Pledge Agent, to:

Michael J. Rice, Esq.
Jacobs, Walker, Rice & Barry, LLC
146 Main Street,
Manchester, CT 06042


A copy of any notice or other communication delivered hereunder shall be provided by the Pledge Agent to the following counsel to each of the Plaintiffs, or any substitute counsel which gives written notice of such substitution to the Pledge Agent.

4

[Names and Addresses of Plaintiffs' counsel]

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P:  (203) 624-9500
F:  (203) 624-9100
E:  jfaxon@faxonlawgroup.com
[Plaintiffs – Edward Barron, Conservator of the E/O D.T.; Carol A. Collins Administratrix of
the E/O Jonathan Conetta; Justin Lewis, Conservator of the Person and E/O of T.M.; Michael
& Linda Marino, Co-Administrators of the E/O Samuel Marino; John Doe #1; John Doe #2;
and John Doe #3]

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P:  (860) 827-0880
F:  (806) 827-9942
E:  kevin@kevinferrylaw.com
[Plaintiffs – John Doe, Adam Doe and Bob Doe]

Philip Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P:  (203) 661-4200
F:  (203) 661-3666
E:  efile@greenwichlegal.com
[Plaintiff – Michael Fleming]

Gerald S. Sack, Esq.
Gerald S. Sack Law Offices LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
T: 860-236-7225
E: gssack@sacklaw.com
[Plaintiff – Daniel Walsh, Conservator of the Person and E/O John Doe]
[Plaintiff – William Nesbitt]

    **Section 12.**   **Continuing Security Interest.**   This Assignment Agreement shall (i)
create a continuing security interest in the Collateral and shall remain in full force and effect
until the delivery of all of the Collateral pursuant to Section 8 of this Assignment Agreement,

and (ii) be binding upon and inure to the benefit of the Parties hereto and their respective heirs, executors, administrators, personal representatives and successors.

   **Section 13.** <u>**Governing Law.**</u> This Assignment Agreement shall be governed by and construed in accordance with the laws of the State of Connecticut.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

**IN WITNESS WHEREOF,** the parties hereto have executed and delivered this Assignment Agreement as of the date first above written.

**BEMER:**

_____

Bruce J. Bemer

**<u>PLEDGE AGENT</u>:**

_____

Michael J. Rice

**Exhibit A**

**Exhibit 4**

DOCKET NOS. FBT-CV-17-5032760-S          :          SUPERIOR COURT
                    FBT-CV-17-5032881-S          :
                    FBT-CV-17-6068382-S          :
                    FBT-CV-18-6070947-S          :          J.D. OF FAIRFIELD
                    FBT-CV-18-6072685-S          :          AT BRIDGEPORT
                                                 :
JOHN DOE, ET AL.                                 :
                                                 :
V.                                               :
                                                 :
BRUCE J. BEMER, ET AL.                           :

### <u>ORDER REGARDING BROKERAGE ACCOUNT HOLDINGS</u>

WHEREAS, five actions naming Bruce J. Bemer ("Bemer") as a defendant have been

consolidated before this Court (the "Consolidated Actions"): (i) the action entitled <u>Doe v. Bemer</u>,

No. FBT-cv-17-5032760-S (the "-60 Action"), (ii) the action entitled <u>Doe v. Bemer</u>, No. FBT-

cv-17-5032881-S (the "-81 Action"), (iii) the action entitled <u>Fleming v. Bemer</u>, No. FBT-cv-17-

6068382-S (the "-82 Action"), (iv) the action entitled <u>Walsh v. Bemer</u>, No. FBT-cv-18-6070947-

S (the "-47 Action"), and (v) the action entitled <u>Nesbitt v. Bemer</u>, No. FBT-cv-18-6072685-S

(the "-85 Action");

WHEREAS, by agreement of the parties, on _____, 2018, this Court

entered a Stipulated Prejudgment Relief Order (the "Stipulated Prejudgment Relief Order")

imposing certain restraints on Bemer in respect of his brokerage account currently maintained

with ███████████████ (the "Brokerage Account"), and any successor account(s) into

which Permitted Transfers (defined below) are made; and

WHEREAS, the Stipulated Prejudgment Relief Order requires that Bemer serve this

Order (the "Brokerage Account Order") on ███████████████ and any other investment

firm ("Successor Investment Firm") to which a Permitted Transfer is made so that ███████

██████████ and any Successor Investment Firm is aware of the restraint placed upon the Brokerage Account, as hereinafter defined;

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED, and DECREED that Bemer is hereby restrained as follows:

(1)     Except as otherwise provided in this Brokerage Account Order, Bemer shall hold and retain all assets held in his brokerage account, Account No. ██████ with ██████ ██████ (the "Brokerage Account") in whatever form they are currently held, and Bemer is hereby enjoined and restrained from transferring, withdrawing, removing, dissipating, encumbering, pledging, assigning, or disposing of the Brokerage Account Holdings.

(2)     Notwithstanding any provisions of Paragraph (1) to the contrary, Bemer shall be permitted to cause normal and customary transactions in Brokerage Account Holdings, including but not limited to: (i) sales and purchases of securities (including, but not limited to stocks and bonds) or like investment vehicles, including purchases made on margin in accordance with industry custom and practice, (ii) sales of securities from which proceeds are used to pay capital calls on Brokerage Account Holdings, (iii) sales of securities from which proceeds are used to repay a margin loan secured by Brokerage Account Holdings, (iv) sales of securities from which proceeds are used to pay reasonable fees for investment management services for the Brokerage Account Holdings, and (v) sales of securities from which proceeds are used to pay taxes imposed with respect to Brokerage Account Holdings.

(3)     Notwithstanding any provisions of Paragraph (1) to the contrary, Bemer shall be permitted to (A) transfer the Brokerage Account Holdings to an entity in which Bemer owns, directly or indirectly, a 100% beneficial interest, and/or (B) transfer the Brokerage Account Holdings to an account with a Successor Investment Firm (either or both of (A) and/or (B), a

"Permitted Transfer"). Should Bemer make a Permitted Transfer, the provisions of Paragraphs (1)-(3) shall continue to apply as they did to the Brokerage Account Holdings.

      (4)     If not earlier vacated by the Court, this Brokerage Account Order shall be vacated automatically as of the earliest of the following dates:

      (b)     The first date on which all claims against Bemer in the Consolidated Actions have been withdrawn;

      (c)     The first date on which, as to all claims against Bemer in the Consolidated Actions, both (i) final judgment for Bemer has entered and (ii) such judgment is not subject to further appeal (that is, such claims have been "Finally Dismissed");

      (d)     The first date on which, as to all claims against Bemer in the Consolidated Actions, both (i) final judgment has entered against Bemer and (ii) Bemer has satisfied such judgment liability (that is, such claims have been "Fully Satisfied"); or

      (e)     The first date on which all claims against Bemer in the Consolidated Action have been (i) withdrawn, (ii) Finally Dismissed, or (iii) Fully Satisfied.

It is so ordered.

Signed this _____ day of _____, 2018 at Bridgeport, Connecticut.

 

                                _____

                                Connecticut Superior Court Judge

DOCKET NOS. FBT-CV-17-5032760-S          :          SUPERIOR COURT
              FBT-CV-17-5032881-S          :
              FBT-CV-17-6068382-S          :
              FBT-CV-18-6070947-S          :          J.D. OF FAIRFIELD
              FBT-CV-18-6072685-S          :          AT BRIDGEPORT
                                   :

JOHN DOE, ET AL.          :

V.          :

                                   :

BRUCE J. BEMER, ET AL.          :          APRIL 6, 2018

### JOINT MOTION FOR ENTRY OF
### STIPULATED PROTECTIVE ORDER
### REGARDING MATERIALS EXCHANGED IN FURTHERANCE OF
### STIPULATED PREJUDGMENT RELIEF

The plaintiffs in the above-captioned actions and defendant Bruce J. Bemer ("Mr. Bemer," and together with the plaintiffs, the "Movants"), jointly request that the Court enter the proposed Stipulated Protective Order attached as <u>Exhibit A</u>.  This Stipulated Protective Order will formalize the Movants' agreement concerning the confidentiality of certain materials exchanged in their effort to avoid costly, time-consuming litigation over contested applications for prejudgment relief.  In further support of this motion, the Movants would respectfully show the Court the following:

The plaintiffs have asserted claims against Mr. Bemer and applied for prejudgment relief to secure any award they might receive.  Rather than litigate these applications for prejudgment relief – applications whose merit Mr. Bemer contested – the Movants agreed to a negotiated resolution: that Mr. Bemer would marshal assets worth approximately $25 million, the plaintiffs would review documents and information detailing those assets, and, with the plaintiffs' agreement, the Movants together would ask the Court to order that Mr. Bemer post these assets as prejudgment security for any eventual liability to the plaintiffs.

To put the parties' agreement into effect, the Movants have had to exchange documents and information detailing private financial information – information including the nature of assets held, their values, their locations, and their potential uses and marketability.   Before sharing this information, the Movants agreed to hold it in confidence pending the Court's entry of an appropriate protective order.   Now, with the Movants' stipulated prejudgment security package almost fully documented, the Movants ask that the Court enter the protective order needed for the confidential information whose exchange made their agreement possible.

**WHEREFORE,** the Parties respectfully request the Court grant this motion and enter the proposed Stipulated Protective Order.

PLAINTIFFS,
JOHN DOE; ADAM DOE; AND BOB DOE

By: /s/ Kevin C. Ferry
    Kevin C. Ferry, Esq.
    Law Office of Kevin C. Ferry, LLC
    77 Lexington Street
    New Britain, CT 06052
    P:  (860) 827-0880
    F:  (806) 827-9942
    E:  kevin@kevinferrylaw.com

PLAINTIFFS,
EDWARD BARRON, CONSERVATOR OF THE E/O D.T.; CAROL A. COLLINS ADMINISTRATRIX OF THE E/O JONATHAN CONETTA; JUSTIN LEWIS, CONSERVATOR OF THE PERSON AND E/O OF T.M.; MICHAEL & LINDA MARINO CO-ADMINISTRATORS OF THE E/O SAMUEL MARINO; JOHN DOE #1; JOHN DOE #2; AND JOHN DOE #3

By: /s/ Joel Faxon
    Joel Faxon, Esq.
    Faxon Law Group, LLC
    59 Elm Street
    New Haven, CT 06510
    P:  (203) 624-9500
    F:  (203) 624-9100
    E:  jfaxon@faxonlawgroup.com

PLAINTIFF,
MICHAEL FLEMING

PLAINTIFF,
DANIEL WALSH CONSERVATOR OF
THE PERSON AND E/O JOHN DOE

By: */s/ Philip D. Russell*
    Philip D. Russell, Esq.
    Philip Russell, LLC
    66 Field Point Road
    Greenwich, CT 06830
    P:  (203) 661-4200
    F:  (203) 661-3666
    E:  efile@greenwichlegal.com

By: */s/ Gerald S. Sack*
    Gerald S. Sack, Esq.
    Gerald S. Sack Law Offices LLC
    836 Farmington Avenue, Suite 109
    West Hartford, CT 06119
    T: 860-236-7225
    E: gssack@sacklaw.com
    Juris No. 423992

PLAINTIFF,
WILLIAM NESBITT

DEFENDANT,
BRUCE J. BEMER

By: */s/ Gerald S. Sack*
    Gerald S. Sack, Esq.
    Gerald S. Sack Law Offices LLC
    836 Farmington Avenue, Suite 109
    West Hartford, CT 06119
    T: 860-236-7225
    E: gssack@sacklaw.com
    Juris No. 423992

By: */s/ Ryan P. Barry*
    Ryan P. Barry
    Barry, Barall & Spinella, LLC
    202 West Center Street, 1st Floor
    Manchester, CT 06040
    T: 860-649-4400
    F: 860-645-7900
    E: rbarry@bbsattorneys.com
    Juris No. 428935

## CERTIFICATION

I certify that a copy of the above was or will immediately be mailed or delivered electronically or non-electronically on April 6, 2018, to all counsel and self-represented parties of record and that written consent for electronic delivery was received from all counsel and self-represented parties of record who were or will immediately be electronically served:

Kevin C. Ferry, Esq.
Law Office of Kevin C. Ferry, LLC
77 Lexington Street
New Britain, CT 06052
P: (860) 827-0880
F: (806) 827-9942
E: kevin@kevinferrylaw.com

Joel Faxon, Esq.
Faxon Law Group, LLC
59 Elm Street
New Haven, CT 06510
P: (203) 624-9500
F: (203) 624-9100
E: jfaxon@faxonlawgroup.com

Edward J. Gavin
1087 Broad Street, 1st Fl.
Bridgeport, CT 06604
T: 203-347-7050
F: 203-683-6555
E: ed@edgavinlaw.com

Philip D. Russell, Esq.
Philip Russell, LLC
66 Field Point Road
Greenwich, CT 06830
P: (203) 661-4200
F: (203) 661-3666
E: efile@greenwichlegal.com

Gerald S. Sack, Esq.
Gerald S. Sack Law Offices LLC
836 Farmington Avenue, Suite 109
West Hartford, CT 06119
T: 860-236-7225
E: gssack@sacklaw.com

Ryan P. Barry
Barry, Barall & Spinella, LLC
202 West Center Street, 1st Floor
Manchester, CT 06040
T: 860-649-4400
F: 860-645-7900
E: rbarry@bbsattorneys.com

Ryan P. Barry
_____
Commissioner of the Superior Court

4

# EXHIBIT A

DOCKET NOS. FBT-CV-17-5032760-S          :          SUPERIOR COURT
             FBT-CV-17-5032881-S          :
             FBT-CV-17-6068382-S          :
             FBT-CV-18-6070947-S          :          J.D. OF FAIRFIELD
             FBT-CV-18-6072685-S          :          AT BRIDGEPORT
                                      :

JOHN DOE, ET AL.          :

V.          :

BRUCE J. BEMER, ET AL.          :

## STIPULATED PROTECTIVE ORDER
## REGARDING MATERIALS EXCHANGED IN FURTHERANCE OF
## STIPULATED PREJUDGMENT RELIEF

      WHEREAS, the plaintiffs in the above-captioned actions (the "Plaintiffs") and defendant Bruce J. Bemer ("Defendant," together with the Plaintiffs, the "Parties", and each individually a "Party") have exchanged and may continue to exchange documents, information and other materials containing or relating to confidential, proprietary information of another Party; and

      WHEREAS, the Parties have exchanged and may continue to exchange these documents, information, and materials in their effort to resolve applications by Plaintiffs for prejudgment relief against Bemer (their "Resolution Efforts");

      IT IS HEREBY ORDERED that the following Protective Order be entered:

      1.    <u>Confidential Information</u>.

      (a)    Each Party shall have the right to designate as subject to this Protective Order any Produced Material (as defined below) that the producing Party reasonably deems to meet the following definition of Confidential Information.  This designation shall be made by either (1) stamping each page of a document containing Confidential Information with the legend CONFIDENTIAL, at or before production to the receiving

1

Party, or (2) for Confidential Information produced before entry of this order, notifying the recipient of such Confidential Information, within fifteen days of entry of this order, that it has been designated as CONFIDENTIAL. In the event a Party inadvertently produces Confidential Information without such legend, that Party shall promptly furnish written notice to the receiving Party that the Confidential Information is designated CONFIDENTIAL under this Protective Order along with appropriately labeled copies of the Confidential Information. Such post-production designation of Confidential Information shall not be deemed a waiver of the right to assert confidentiality or of the protections of this Protective Order, and shall not entitle the receiving Party or its attorneys to disclose such information in violation of this Protective Order. Any Confidential Information not reduced to documentary, electronic, tangible or physical form, or which cannot be easily stamped, may be designated by providing written notice of such designation and the designation of any storage media shall extend to the contents of such storage media. Materials provided for inspection by a Party's counsel need not be designated as Confidential Information until copies of the materials are requested after inspection and selection by counsel.

(b)     "Confidential Information" shall mean and include any document (whether in hard copy or computer readable form) or other information provided by or on behalf of a Party (or any Party's attorneys or other agents) in connection with the Resolution Efforts (the "Produced Material") that contains non-public, confidential or proprietary information, whether personal or business-related, including information that constitutes, reflects or concerns trade secrets, proprietary data, or personal financial information, but shall not include Produced Material that:

2

(i)     Has been (and remains) or becomes lawfully in the possession of the receiving Party through communications other than production or disclosure by the designating Party, unless such material is covered by a separate non-disclosure or confidentiality agreement, in which case the receiving Party may continue to use such subject to those agreements;

(ii)     Has been or becomes part of the public domain, by publication or otherwise, and not due to any unauthorized act or omission on the part of the receiving Party; or

(iii)     May not under law be treated as confidential.

(c)     Nothing herein shall impose any restriction on the use or disclosure by a Party of its own documents or information.

2.     <u>Limits on Use of Confidential Information</u>.

(a)     Confidential Information, or the substance or content thereof (including any notes, memoranda, transcripts, exhibits, filings, or other documents relating thereto), shall be used solely by the Parties in the above-captioned actions and in any appeals therefrom, and shall not be made available or summarized to any persons, whether or not Parties, other than those persons permitted to access such information by Paragraph 3. Confidential Information shall be maintained by the receiving Party under the overall supervision of outside counsel.

(b)     Any person in possession of information designated as CONFIDENTIAL shall exercise reasonably appropriate care with regard to its storage, custody and use in order to ensure that its confidential nature is maintained.

3

(c)     If Confidential Information is disclosed to anyone other than in a manner authorized by this Protective Order, or if information is disclosed that is subsequently designated as CONFIDENTIAL pursuant to Paragraph 1, the Party responsible for such disclosure must immediately bring all pertinent facts relating to such disclosure to the attention of the other Party and make every reasonable effort to retrieve such Confidential Information and prevent further disclosure.

3.     Authorized Disclosure of Confidential Information.

(a)     Information designated as CONFIDENTIAL, or copies or extracts therefrom and compilations and summaries thereof, may be disclosed, summarized, described, characterized or otherwise communicated or made available in whole or in part only to the following persons:

(i)     the Parties' outside counsel of record and regular and temporary employees of such counsel to whom it is necessary that the information be shown;

(ii)     any Party whose assistance is reasonably required or requested by counsel;

(iii)     any bona fide outside independent consultant or expert retained or employed by or at the direction of counsel for a Party;

(iv)     the court and court personnel subject to Paragraph 5, and stenographic and video reporters engaged in proceedings or otherwise employed; or

(v)     other persons upon such terms and conditions as the Parties may agree in writing, or as the court may hereafter by order direct.

4

(b)     Notwithstanding any other provision of this Protective Order, nothing herein shall prohibit the disclosure of a document designated as CONFIDENTIAL to any person who is not described above and is clearly identified as the author or a recipient of the document.

(c)     All persons listed in Paragraph 3(a) who may be given access to information designated as CONFIDENTIAL, with the exception of the court and court personnel, must, prior to disclosure of such information, confirm their understanding and agreement to abide by the terms of this Protective Order by completing and signing a copy of an undertaking in the form attached hereto as Exhibit A.

4.     Designation of Deposition Transcripts.

Any deposition transcript containing Confidential Information shall be marked on the cover as CONFIDENTIAL.  A Party may designate any portion or all (if appropriate) of the transcript as containing Confidential Information by so advising the deposition reporter, who shall accordingly indicate in the deposition transcript what portion(s) of the testimony (or exhibits thereto) were so designated, or by so advising all other Parties in writing, and with page and line designations, within five (5) business days after receipt of the transcript.  Until five (5) business days have passed after receipt of any transcript, that entire transcript shall be deemed to be Confidential, absent court order to the contrary.  In the event of disagreement about the Confidential status of a deposition transcript, it shall continue to be treated as Confidential until the court rules otherwise.

5.     Treatment of Hearing Testimony Argument, and Filings.

(a)     With respect to testimony elicited and exhibits marked during hearings and other proceedings, whenever counsel for any Party deems that any question, line of

5

questioning, or argument calls for the disclosure of or otherwise includes Confidential Information, counsel may designate on the record that it is Confidential. Whenever material designated as CONFIDENTIAL is to be discussed in a hearing or other proceeding, any Party claiming such confidentiality may, with permission of the court only, exclude from the room any person who is not entitled under this Protective Order to receive information designated as CONFIDENTIAL.

(b)     At least three (3) business days (excluding court holidays and closings) in advance of filing any document in these civil actions that contains or discloses information designated as Confidential Information, the Party making the filing ("Filing Party") shall notify the Party that has marked the information as Confidential ("Marking Party"). The Marking Party may require that the document be filed under seal, in which case the Marking Party shall provide the Filing Party with a Motion to Seal pursuant to Practice Book § 11-20A. The Filing Party shall file the motion to seal and shall redact the Confidential Information from its filings pending a ruling on the motion to seal.

6.     <u>Designation of Documents Under Seal and Effect of Protective Order</u>.

(a)     Nothing herein shall be construed to affect in any way the evidentiary admissibility of any document, testimony or other matter during the above-captioned actions.

(b)     Entering into, agreeing to and/or producing or receiving Confidential Information or otherwise complying with the terms of this Protective Order shall not:

(i)     Operate as an admission by any Party that any Produced Material designated as Confidential Information contains or reflects trade secrets or any

6

other type of confidential or proprietary information entitled to protection under applicable law;

(ii)     Prejudice in any way the rights of any Party to object to the production of documents it considers not subject to discovery, operate as an admission by any Party that the restrictions and procedures set forth herein constitute adequate protection for any particular information deemed by any Party to be Confidential Information, or prejudice in any way any Party's rights to petition the court for further protective relief;

(iii)     Prejudice in any way the rights of any Party to object to the authenticity or admissibility into evidence of any document, testimony or the evidence subject to this Protective Order; or

(iv)     Prejudice in any way the rights of any Party to seek a determination by the court whether any Produced Material or Confidential should be subject to the terms of this Protective Order.

7.     <u>Challenge to Confidentiality Designation</u>.

Any Party may at any time challenge the designation of any Produced Materials as Confidential Information and may request permission to disclose information with a Confidential designation other than as permitted, pursuant to this paragraph by serving (by facsimile transmission) a written request upon counsel for the producing Party at least ten (10) business days before the date of the proposed disclosure and by providing telephonic notice of such request on the same date as the facsimile is transmitted.   The producing Party shall thereafter respond to the request in writing within five (5) business days (excluding court holidays and closings) after receipt of

7

same.  Absent good cause shown, a failure to respond within such time shall constitute consent to the request.   If, where consent has been withheld, the Parties are subsequently unable to agree on the terms and conditions of disclosure, the matter may be submitted to the court for resolution by the Party seeking disclosure.   Disclosure shall be postponed until a ruling has been obtained from the court.

      8.    <u>Destruction of Designated Information</u>.

All provisions of this Protective Order restricting the use of information shall continue to be binding on the Parties and all persons who have executed acknowledgment forms pursuant to Paragraph 3 until further order of the court, unless the Parties agree otherwise in writing.  Any receiving Party shall destroy all originals and copies of Produced Materials designated CONFIDENTIAL within sixty (60) days after the later of (i) entry of final judgments, after any appeals, in all actions in which the receiving Party is joined, or (ii) the expiration of all appeal periods in all actions in which the receiving Party is joined, except that outside counsel for each Party may maintain in its files, subject to this order's continuing effect, one copy of each pleading filed with the court, and each deposition together with the exhibits marked at the deposition.  Upon receipt of any subpoena or other process seeking such information, the Party receiving the process shall immediately notify outside counsel for the producing Party in order that the latter may protect its interests.  When documents are destroyed in accordance with this paragraph, the destroying Party shall certify such destruction in writing to the producing Party.

9.    Inadvertent Production.

The inadvertent production of any privileged or otherwise protected information shall not be deemed a waiver or impairment of any claim of privilege or protection, including but not limited to the attorney-client privilege or the attorney work product protection. The producing Party shall immediately notify the receiving Party in writing when inadvertent production is discovered. Upon receiving written notice from the producing Party that protected information has been inadvertently produced, the receiving Party shall immediately return all such information (including any copies) to the producing Party. Such return shall be without prejudice to, and does not waive, any claim by the returning Party that the returned information not protected, provided, however, that nothing contained in the returned document(s) shall be used by the returning Party to establish the alleged lack of protection.

10.    Continuing Jurisdiction.

The court will retain jurisdiction over any controversies arising out of this document for one year following the date on which all above-captioned actions have been resolved by settlement, final judgment, or final disposition on appeal.


DATED: _____        SO ORDERED:

_____
Judge

9

DOCKET NOS. FBT-CV-17-5032760-S           :    SUPERIOR COURT
              FBT-CV-17-5032881-S           :
              FBT-CV-17-6068382-S           :
              FBT-CV-18-6070947-S           :    J.D. OF FAIRFIELD
              FBT-CV-18-6072685-S           :    AT BRIDGEPORT
                                            :
JOHN DOE, ET AL.                            :
                                            :
V.                                          :
                                            :
BRUCE J. BEMER, ET AL.                      :

## EXHIBIT A

## AGREEMENT TO BE BOUND BY PROTECTIVE ORDER

I hereby certify: (i) my understanding that Produced Material and/or Confidential and/or highly confidential information are being provided to me pursuant to the terms and restrictions of the Protective Order ("Order") entered by the Connecticut Superior Court in the above-captioned actions; and (ii) that I have read the Order. I understand the terms of the Order, I agree to be fully bound by the Order, and I hereby submit to the jurisdiction of the Superior Court for purposes of enforcement of the Order. I understand that violation of the Order may be punishable by contempt of court.

Dated:_____          Signature:_____

                                     Name:_____

                                     Address:_____

                                             _____

                                             _____